Before STATE INDUSTRIAL COMMISSION, Respondent.

In the Matter of the Claim of ADAM C. KELLER, Respondent, for Compensation under the Workmen's Compensation Law, *v.* REIS & DONOVAN, INC., Employer and THE TRAVELERS INSURANCE COMPANY, Insurance Carrier, Appellants.

Third Department, January 5, 1921.

**Workmen's Compensation Law — injury on public highway in city in adjoining State while proceeding to place of work — injury not arising out of and in course of employment.**

A workman who slipped upon a curb in one of the public highways in a city in an adjoining State, at about twenty minutes past eight o'clock while proceeding to his place of work, and was injured, did not sustain an accidental personal injury arising out of and in the course of his employment within the meaning of the Workmen's Compensation Law, although there was an agreement between a labor organization and employers providing that a workman employed outside the city district who does not live near his work must be at the limit of the city district nearest to the place of work as near eight o'clock as is possible, and shall proceed to the place by the shortest route.

KILEY, J., and JOHN M. KELLOGG, P. J., dissent, with memorandum.

APPEAL by the defendants, Reis & Donovan, Inc., and another, from an award of the State Industrial Commission, entered in the office of said Commission on the 21st day of November, 1919, and also from an award of said Commission entered in the office thereof on the 10th day of May, 1920.

*Benjamin C. Loder* [*E. C. Sherwood* and *William B. Davis* of counsel], for the appellants.

*Charles D. Newton, Attorney-General* [*E. C. Aiken, Deputy Attorney-General*, of counsel; *Bernard L. Shientag*, counsel to the State Industrial Commission, and *Peter M. Daly* of counsel], for the respondents.

WOODWARD, J.:

The claimant, on the 12th day of September, 1919, slipped upon a curb in one of the public highways in Newark, N. J., and sustained a fracture of the lower extremity of the shaft of

the fibula of the left leg, for which the State Industrial Commission has made an award covering the period from the time of the accident to the 10th of November, 1919, on which date the disability terminated. Ordinarily, of course, an employee is not entitled to compensation for injuries occurring upon the public highways, to which we are all exposed in common, but the claimant lived in the borough of The Bronx in the city of New York; his employer, engaged as a general electrical contractor, had offices at 8 West Fortieth street, New York, and at the time had a contract for the doing of some work in a building situated in Newark, N. J., and the accident occurred at about twenty minutes past eight o'clock in the morning, after the beginning of work hours, under the provisions of an agreement between a labor organization and employers, among them the defendant here. The important question is, of course, whether there was " an accidental personal injury sustained by the employee arising out of and in the course of his employment " (Workmen's Compensation Law, § 10), and this involves the question whether an agreement regulating hours and conditions of labor entered into between a labor organization and employers can operate to give a compensable case where none would exist without it.

The agreement here under consideration provided that " the hours of labor shall be eight hours per day, to be performed within the hours of 8 A. M. and 5 P. M.," and that " all workmen shall be paid for the time they are actually at work in the Borough of Manhattan, Borough of The Bronx, and at all other points within a radius of ten (10) miles from City Hall." It was then provided that " a workman employed outside the city district," as above defined, " who does not reside near his place of work, must be at the limit of the city district nearest to the place of work as near to 8 A. M. as is possible, and shall proceed to the place by the shortest route," and while there is no specific provision for paying for the time thus lost to the employer, it is a fair inference that this was the purpose of the agreement; that it was intended that an eight-hour day should prevail for all workmen within the scope of the agreement, those going outside to be paid for the time lost in traveling beyond the city territory. But this agreement did not attempt to provide that the employer should become an insurer of the workman

against the risks incident to travel upon the public highways. It did not undertake to give to employees outside of the city district a greater degree of protection than those who worked within the district; it merely fixed an eight-hour day and provided that those within a certain district must perform eight hours of labor, while those without such district, and subject to the agreement, must be at the district line at the hour fixed for service and must proceed by the nearest route to the place of employment. In other words, the eight-hour day of labor was not required of those who went outside the city district; they satisfied the terms of the agreement if they were at the boundary line nearest to the place of employment and proceeded by the most direct route to the place of employment, and the spirit of the agreement is manifest in the further provision that " where a workman is employed outside the city district, and resides near such work, he shall report and quit at the regular time, and shall not be entitled to any car fare." The whole purpose of the agreement was to equalize conditions of labor; to provide that the man going outside of the city district, with the exception above noted, should not be obliged to give more time to the employment than those within the district. The eight-hour day standard was to be subject to such a reduction of the time at labor as was necessary to reach the place beyond the nearest line of the city district. It was not an agreement that the employment should begin at eight o'clock outside of the city, subjecting the employer to the burden of risks in no wise connected with his particular enterprise, but a concession from the eight hours prescribed for those within the city district. He was to get as near to the place of employment within the city district as possible at eight o'clock in the morning, and he was not to be penalized for the time that it took him to go from that point to his place of labor; his wages were to be those provided for the eight-hour day, and while " all workmen shall be paid for the time they are actually at work " in the city district, outside they were to be paid for the eight hours, regardless of the time actually worked, provided they complied with the conditions named. If the employer did not like to lose this time it was provided that he might direct the employee to board at the place where the work is located, but in that event the

employer was to pay the board bill, when, of course, he would be entitled to the full eight hours' work.

From this analysis it is evident that the contracting parties did not contemplate increasing the liabilities of the employer by commencing the employment before the claimant had reached the place of labor. There was no intention of making better conditions for those who went outside the city district than those who worked within the district; it merely protected the man going outside from the hardship of getting up early enough in the morning to reach his employment by eight o'clock. He was doing what his fellow-laborers did in substance when he reached the city district boundary at the time they were called upon to go to work within that district, and beyond that he was allowed from his labor sufficient time to reach the place of employment without a sacrifice of any part of his day's wages. The agreement obviously sought an equalizing of the conditions of labor for the members of its union, with no purpose to change the provisions of the Workmen's Compensation Law in its relation to such members, and clearly no employer, acting freely, would enter into an agreement to become the insurer of his employees upon their way to work, for the very spirit of the statute is that it is to compensate for the accidents growing out of the employment, and which are properly chargeable against the industry as a part of the cost of production. The claimant may, for aught that we know, have a cause of action against the city of Newark for negligence in the care of its highways, but we are fully persuaded he has no claim against the enterprise conducted by his employer because of an accident happening to him upon the public highways of Newark, while he was doing no service for the employer.

The provision of the statute is that " compensation provided for in this chapter shall be payable for injuries sustained or death incurred by employees engaged in the following hazardous employments " (Workmen's Compensation Law, § 2, as amd. by Laws of 1917, chap. 705), and clearly the claimant was not " engaged " in a " hazardous employment " when he was walking along one of the highways of Newark, in the State of New Jersey, and doing nothing to advance the interests of his employer; that is not one of " the fol-

lowing hazardous employments " mentioned in the statute. The act, to quote from a Massachusetts case, cited in *Matter of Alpert* v. *Powers* (223 N. Y. 97, 101), " does not afford compensation for injuries or misfortunes, which merely are contemporaneous or coincident with the employment, or collateral to it. * * * The personal injury must be the result of the employment and flow from it as the inducing proximate cause. * * * The direct connection between the personal injury as a result and the employment as its proximate cause must be proved by facts before the right to compensation springs into being." Nothing that the claimant was doing had any relation whatever to the employment; he was doing nothing for the employer. He was serving his own purpose of getting to the place of employment, under an agreement which protected him against loss of time, but which in nowise advanced the well-being of the employer, and the employment to which he was proceeding could in no possible sense be said to be a proximate cause of the accident. " Employment," says subdivision 5 of section 3 of the statute (as amd. by Laws of 1917, chap. 705), " includes employment only in a trade, business or occupation carried on by the employer for pecuniary gain, or in connection therewith," and " ' employee ' means a person engaged in one of the occupations enumerated in section two or who is in the service of an employer whose principal business is that of carrying on or conducting a hazardous employment upon the premises or at the plant, or in the course of his employment away from the plant of his employer." (§ 3, subd. 4, as amd. by Laws of 1917, chap. 705.) The accident must be " in the course of his employment," " only in a trade, business or occupation carried on by the employer; " and the facts in this case do not bring the claimant within these definitions prescribed by the statute. " When an employee is injured through some act of his own, not an incident to his employment, and not authorized or induced by his employer in connection with his employment, the injury does not arise out of and in the course of his employment within the meaning of subdivision 7, section 3 of the Workmen's Compensation Law " (*Matter of Gifford* v. *Patterson, Inc.,* 222 N. Y. 4, 8); and we are clear that the

State Industrial Commission is in error in making the award here under review.

The award should be reversed, and the claim dismissed.

All concur, except KILEY, J., dissenting with a memorandum, in which JOHN M. KELLOGG, P. J., concurs.

KILEY, J. (dissenting):

I am of the opinion that this award should be sustained. Subdivision 4 of section 3 of the Workmen's Compensation Law (as amd. by Laws of 1917, chap. 705) says: " ' Employee ' means a person engaged in one of the occupations enumerated in section two or who is in the service of an employer whosê principal business is that of carrying on or conducting a hazardous employment upon the premises or at the plant, *or in the course of his employment away from the plant of his employer,*" etc.   The employer was an electrical contractor and some of its work was electrical wiring.   The claimant resided in the city of New York, and the principal place of business of his employer was also in New York city.   On September 12, 1919, and previous thereto, the employer was doing a job of electrical wiring in Newark, N. J.   The claimant had worked for this employer several years and was in his employ on the day aforesaid.   It appears from the record that at the time of this accident an agreement was in existence and operative, entered into between the Electrical Contractors' Association and the inside electrical workers of Greater New York, to which the employer herein, and the claimant employee (he being an inside electrical worker), were parties.   It provides as follows:

" 5. The hours of labor shall be eight hours per day, to be performed within the hours of 8 A. M. and 5 P. M. on every day, excepting Saturday, Sunday and on legal holidays.   The hours on Saturdays shall be from 8 A. M. until 12 noon."

" 12. All workmen shall be paid for the time they are actually at work in the Borough of Manhattan, Borough of The Bronx, and at all other points within a radius of ten (10) miles from City Hall, which territory shall be known as the city district, and shall receive all necessary fare exceeding ten cents.

" 13. A workman employed outside the city district, who

does not reside near his place of work, must be at the limit of the city district nearest to the place of work as near to 8 A. M. as is possible, and shall proceed to the place by the shortest route. In returning he shall arrive at the aforesaid point as near to 5 P. M. as possible, but if directed by his employer to board at the place where the work is located, the necessary expenses for the board shall be paid by the employer.

" 14. Where a workman is employed outside the city district, and resides near such work, he shall report and quit at the regular time, and shall not be entitled to any car fare."

This is important only as showing the contract between claimant and his employer. It shows that his day and his pay commenced at eight o'clock A. M. and at the New York city line; from the city line to Newark, N. J., claimant was on the employer's time and transported to his work or to the station, within three or four blocks of his work, at his employer's expense. If the railroad or trolley station was at the works or place where claimant was performing service under his contract, then, under *Matter of Littler* v. *Fuller Co.* (223 N. Y. 369), there would not be any question as to his right to compensation. While the evidence does not show, outside of the rules above quoted, from these it is inferable that his employer was paying claimant's car fare as far as the road ran toward the place where he was to render service. We have this situation, the time of injury was eight-twenty A. M.; while he was on the employer's time and just after he left the conveyance on his way to the place of actual service he slipped and fell while he was completing a small fraction of his journey on foot, made necessary because the conveyance did not go quite to his destination. I think he was in the course of his employment under section 3, subdivision 4, of the Workmen's Compensation Law, and that the accident arose out of his employment. (See §§ 10, 3, subd. 7, as amd. by Laws of 1917, chap. 705.) It is too narrow a construction of the law to hold that this little hiatus of three or four blocks took the case out of the statute, where, by force of circumstances, he had to walk to his work.

I favor affirmance.

JOHN M. KELLOGG, P. J., concurs.

Award reversed and claim dismissed.