Keely *v.* Metropolitan Edison Company et al.,
Appellants.

Argued December 12, 1944. Before KELLER, P. J.,
BALDRIGE, RHODES, HIRT and RENO, JJ. (JAMES, J.,
absent).

*George H. Detweiler,* with him *Harold J. Ryan,* for
appellants.

*Robert Grey Bushong,* for appellee.

OPINION BY HIRT, J., March 5, 1945:

Questioning the award of compensation affirmed by the lower court, appellant contends that claimant's husband when injured was not in the course of his employment, and that in any view a causal connection between the accident and his death has not been established.

George E. Keely's home was in Reading where he was employed by Metropolitan Edison Company as a registered surveyor at monthly wages of $250. He had made a preliminary survey of the location of a proposed transmission line near the City of Easton and on February 2, 1941, was sent back there by his employer to recheck his field notes and definitely locate the line on the ground. His work-week was five days of eight hours each with no overtime. Since he was away from home on this assignment all of his hotel expense by agreement was paid by his employer but it was contemplated that he return to his home in Reading each Friday afternoon and remain there until the following Monday morning. The employer agreed to pay his living expenses if he stayed in Easton over any week end; otherwise it paid his traveling expense back and forth from his home. He was not restricted to travel by railroad or bus. When he used his own automobile for the purpose his employer paid him six cents for each mile traveled between Easton and Reading. On Friday, February 28, 1941, at the end of his work for the week he was driving his own automobile from Easton on a direct route to Reading with Schartel, a fellow employee as a passenger. On the way during a snow storm the car swerved out of control off the highway up an embankment and there overturned on to its right side. Schartel was then wedged against the right side of the car and Keely, bent over the steering wheel, was on top of him. Passersby pried open the left door and helped them up out of the automobile. The car was later towed to a garage and Keely completed the trip home by bus. He

remained there until the following Monday when he returned to Easton and worked there all week. On Friday, March 7th, he again returned home for the week end. On arising the following Monday morning he complained of severe pain in his chest. A physician was called and he was removed to a hospital. That evening he suddenly collapsed and died.

Generally, the employer's liability ceases when the workman leaves the employer's premises with no further duties to perform, and injury from accident on the way home is not compensable (*Lillian Haley v. City of Phila.*, 107 Pa. Superior Ct. 405, 163 A. 917; *Cronin v. American Oil Co.*, 298 Pa. 336, 148 A. 476) even where the *regular* employment of the workman is in another city some distance from his home, and the employer pays the cost of his daily transportation to and from his work. *Guenesa v. Ralph V. Rulon Inc.*, 124 Pa. Superior Ct. 569, 189 A. 524. This appeal however does not present a case where an employee at the end of his working day at his usual place is injured while on the way home. The board specifically found that claimant's husband when injured was on a special mission at the direction of and in furtherance of the business of his employer. Accordingly the board concluded that the present claim was within the exception applicable to an employee assigned to the performance of a special duty and therefore compensable. *Haddock v. Edgewater Steel Co.*, 263 Pa. 120, 106 A. 196; *Cymbor v. Binder Coal Co.*, 285 Pa. 440, 132 A. 363; *Messer v. Manufacturer's L. & H. Co.*, 263 Pa. 5, 106 A. 85; *Krapf v. Arthur*, 95 Pa. Superior Ct. 468; *Nilsson v. Nepi Brothers*, 138 Pa. Superior Ct. 107, 9 A. 2d 912, affirmed in 338 Pa. 561, 14 A. 2d 75.

The testimony is entirely sufficient to support the above finding of the board and to bring the case within the exception of the above cases. Keely was not permanently transferred to Easton but was sent there to check a survey on a single project. The expectation

was not that he remain there continually until the completion of his assignment but that he return to his home each week end. The effect of the agreement with his employer was the same as if he were sent on a new mission each week. We are in entire agreement with this statement of Commissioner Jacoby, speaking for the board: "Here Keely was performing a special service for defendant and it was certainly not to be expected that he would change his residence for a short period. So that when defendant required his presence at Easton and paid his way to and from that place by agreement, the transportation was for the benefit of both, and constituted an exception to the rule that the employer is not liable for an accident while going to or coming from work." Keely, under the findings fully supported by the evidence, must be regarded as furthering the interests of his employer at the time of the accident under the then terms of his employment and the fact that he was driving his own automobile did not take him out of the course of it. The employer agreed that he might use his own automobile for travel and paid him on a mileage basis; this fact eliminates from the case the question (*Wesolowski v. Hancock Ins. Co.*, 308 Pa. 117, 162 A. 166; *Morris v. Ward*, 345 Pa. 226, 26 A. 2d 926) whether the use of Keely's automobile was reasonably necessary to his employment.

Keely was an obese man weighing about 250 lbs. It would have been unusual if he could have survived the accident without some injury. He was found crouched over the steering wheel following the overturn of the car. It is not an unreasonable inference that the jolt exerted pressure on his chest. There is evidence that it did. Shortly after the accident he complained of a "slight bruise" on his "shoulder and side" but made light of it. Under the medical testimony Keely suffered a dissecting aneurism of the aorta attributable to the accident, ultimately resulting in his death. All of the circumstances indicate a causal connection with the

accident. He was a well man (except for a severe smoker's cough) and a cardiograph made the day of his death did not disclose a diseased heart. Following the accident Keely was frequently observed rubbing his chest, indicating an abnormal sensation about the heart. His appearance often was distressed; he apparently was in pain. The fact that he lived and did his work for more than a week after the accident does not necessarily rebut the inference of causal connection in the light of the medical testimony. Well qualified medical witnesses testified that the aneurism or initial rupture of the aorta was attributable to the accident and that pressure or a blow on the chest was the cause of it. In their opinion the jolt of the accident caused the aneurism following which blood from the aorta "dissected" through the two under coats of the tissues in the sac around the heart; and after a week, through the third coat, ending in a final rupture from pressure discharge-ing blood through the pericardial sac into the chest cavity. A post mortem examination confirmed these conditions as the immediate cause of death. The board accepted claimant's medical testimony in material respects.

We are of the opinion, as was the lower court, that the facts and reasonable inferences from them (*Haddock v. Edgewater Steel Co.*, supra) reflected in the findings, support the ultimate conclusion of the board that "Keely's death was the direct result of his accidental injuries and that the ...... award should be sustained."

Judgment affirmed.