CARDILLO, DEPUTY COMMISSIONER, UNITED STATES EMPLOYEES' COMPENSATION COMMISSION, *v.* LIBERTY MUTUAL INSURANCE CO. ET AL.

No. 265.   Argued January 10, 1947.—Decided March 10, 1947.

470

*Philip Elman* argued the cause for petitioner. With him on the brief were *Acting Solicitor General Washington, Assistant Attorney General Sonnett, Paul A. Sweeney* and *Joseph B. Goldman.*

*Arthur J. Phelan* argued the cause for respondent. With him on the brief were *Nelson T. Hartson* and *Edward B. Williams.*

MR. JUSTICE MURPHY delivered the opinion of the Court.

Petitioner, Deputy Commissioner of the United States Employees' Compensation Commission, issued an order under the District of Columbia Workmen's Compensation Act[1] awarding compensation to the widow of one Clarence H. Ticer. It was specifically found that the injury which led to Ticer's death "arose out of and in the course of the employment." The propriety and effect

---

[1] Act of May 17, 1928, 45 Stat. 600, D. C. Code, 1940, § 36–501.

of that finding are the main focal points of our inquiry in this case.

Section 1 of the District of Columbia Workmen's Compensation Act provides in part that "the provisions of the Act entitled 'Longshoremen's and Harbor Workers' Compensation Act,' . . . shall apply in respect to the injury or death of an employee of an employer carrying on any employment in the District of Columbia, irrespective of the place where the injury or death occurs." The Longshoremen's and Harbor Workers' Compensation Act,[2] § 2 (2), in turn defines the term "injury" to include "accidental injury or death arising out of and in the course of employment, . . ." A finding that the injury or death was one "arising out of and in the course of employment" is therefore essential to an award of compensation under the District of Columbia Workmen's Compensation Act.

In support of his order in this case the Deputy Commissioner made various findings of fact. These may be summarized as follows:

Ticer and his wife were residents of the District of Columbia. He had been regularly employed since about 1934 [3] as an electrician by E. C. Ernst, Inc., a contractor engaged in electrical construction work in the District of Columbia and surrounding areas. In November, 1940, Ticer was transferred by his employer from a project in the District of Columbia to a project at the Quantico Marine Base at Quantico, Virginia. His work at the Marine Base continued for over three years until the time of his injury in December, 1943.

There was in effect at all times an agreement between the electrical workers' union and the employer. Section 15 (b) of this agreement provided that "Transportation

---

[2] Act of March 4, 1927, c. 509, 44 Stat. 1424, 33 U. S. C. § 901 et seq.

[3] There was one exception. For a period of about 6 months in 1938 or 1939 he worked for the United States Government.

and any necessary expense such as board and lodging shall be furnished [by the employer] for all work outside the District of Columbia." The sum of $2 a day was fixed by the parties to this agreement as transportation expense and represented the approximate cost of travel from the District of Columbia to the Quantico Marine Base and return. This sum was paid to Ticer and others in addition to the regular hourly rate of pay. And it was paid in lieu of the employer's furnishing transportation.

Because the job site at the Marine Base was several miles away from the Quantico bus or train terminal, it was necessary for Ticer and his co-workers to drive their own automobiles to and from work. The employees formed a car pool. Each morning they started from their respective homes in their own automobiles and drove to a designated meeting place at Roaches Run, Virginia. From that point they would proceed in one car to the job site at the Marine Base. This procedure was repeated in reverse in the evening. The workers alternated in the use of the cars between Roaches Run and the job site. Non-members of the car pool each paid the car owner $1 for the round trip.

The employer was aware of the means of transportation being used and acquiesced therein. On December 13, 1943, Ticer was driving his car on a direct route from his place of employment to his home, following the close of the day's work. Four co-workers were riding with him, two of them being non-members of the car pool. As the car approached Fort Belvoir, Virginia, a large stone, which came from under the rear wheel of a passing truck, crashed through the windshield of the car. It struck Ticer's head, crushing his skull. Death resulted four days later.

Ticer's widow presented a claim for compensation. At the hearing before the Deputy Commissioner, the employer and the insurance carrier contended that the Virginia Compensation Commission had sole jurisdiction over

the claim and that Ticer's injury did not arise out of or in the course of his employment. The Deputy Commissioner ruled against these contentions. After making the foregoing findings, he entered an order awarding death benefits and funeral expenses to the claimant.

The employer and the insurance carrier then brought this action in the District Court to set aside the order of the Deputy Commissioner. They renewed their jurisdictional objection and alleged a lack of substantial evidence to support the finding that Ticer's injury arose out of and in the course of his employment. The District Court dismissed the complaint, holding that the Deputy Commissioner's findings were supported by evidence in the record and that the compensation order was in all respects in accordance with law. On appeal, the Court of Appeals for the District of Columbia reversed, one justice dissenting. 81 U. S. App. D. C. 72, 154 F. 2d 529. Without passing upon the jurisdictional issue, the court held that Ticer's injury had not arisen out of and in the course of his employment. It felt that Ticer had become entirely free of his employer's control at the close of the day's work at the Marine Base and that he had thereafter assumed his own risk in subjecting himself to the hazards of the highway. We granted certiorari on a petition alleging a conflict with the decision of this Court in *Voehl* v. *Indemnity Ins. Co.,* 288 U. S. 162.

As noted, the Court of Appeals deemed it unnecessary to dispose of the question whether the Deputy Commissioner had jurisdiction over the instant claim. But in reviewing an administrative order, it is ordinarily preferable, where the issue is raised and where the record permits an adjudication, for a federal court first to satisfy itself that the administrative agency or officer had jurisdiction over the matter in dispute. At the same time, however, it is needless to remand this case to the Court of Appeals for a determination of the jurisdictional

issue. That issue was considered and determined by the Deputy Commissioner, who was in turn sustained by the District Court. The facts pertinent to that issue are not seriously disputed and the matter has been fully briefed and argued before us. A remand under such circumstances is not warranted. We accordingly turn to a consideration of the jurisdictional issue.

We are aided here, of course, by the provision of § 20 of the Longshoremen's Act that, in proceedings under that Act, jurisdiction is to be "presumed, in the absence of substantial evidence to the contrary"—a provision which applies with equal force to proceedings under the District of Columbia Act. And the Deputy Commissioner's findings as to jurisdiction are entitled to great weight and will be rejected only where there is apparent error. *Davis* v. *Department of Labor,* 317 U. S. 249, 256–257. His conclusion that jurisdiction exists in this case is supported both by the statutory provisions and by the evidence in the record.

The jurisdiction of the Deputy Commissioner to consider the claim in this case rests upon the statement in the District of Columbia Act that it "shall apply in respect to the injury or death of an employee of an employer carrying on any employment in the District of Columbia, irrespective of the place where the injury or death occurs; except that in applying such provisions the term 'employer' shall be held to mean every person carrying on any employment in the District of Columbia, and the term 'employee' shall be held to mean every employee of any such person." There is no question here but that Ticer was employed by a District of Columbia employer; the latter had its place of business in the District and engaged in construction work in the District, as well as in surrounding areas. But the contention is made that, despite the broad sweep of the statutory language, the

Act applies only where the employee, during the whole of his employment, spent more time working within the District than he spent working outside the District. Using that criterion, it is said that the Act is inapplicable to this case since Ticer was employed on a construction job in Virginia continuously for over three years prior to the accident and did nothing within the District for his employer during that period. The implication is that only the Virginia workmen's compensation law is applicable.

But the record indicates that both Ticer and his wife were residents of the District. He had been hired in the District by his employer in 1934 and had worked on various projects in and around the District from that time until 1940, when he was assigned to the Quantico Marine Base project. While at the Marine Base, he was under orders from the District and was subject to being transferred at anytime to a project in the District. His pay was either carried to him from the District or was given to him directly in the District. And he commuted daily between his home in the District and the Marine Base project.

We hold that the jurisdictional objection is without merit in light of these facts. Nothing in the history, the purpose or the language of the Act warrants any limitation which would preclude its application to this case. The Act in so many words applies to every employee of an employer carrying on any employment in the District of Columbia, "irrespective of the place where the injury or death occurs." Those words leave no possible room for reading in an implied exception excluding those employees like Ticer who have substantial business and personal connections in the District and who are injured outside the District. Whether this language covers employees who are more remotely related to the District

is a matter which we need not now discuss and any arguments based upon such hypothetical situations are without weight in this case.

Nor does any statutory policy suggest itself to justify the proposed exception. A prime purpose of the Act is to provide residents of the District of Columbia with a practical and expeditious remedy for their industrial accidents and to place on District of Columbia employers a limited and determinate liability. See *Bradford Elec. Co.* v. *Clapper,* 286 U. S. 145, 159. The District is relatively quite small in area; many employers carrying on business in the District assign some employees to do work outside the geographical boundaries, especially in nearby Virginia and Maryland areas. When such employees reside in the District and are injured while performing those outside assignments, they come within the intent and design of the statute to the same extent as those whose work and injuries occur solely within the District. In other words, the District's legitimate interest in providing adequate workmen's compensation measures for its residents does not turn on the fortuitous circumstance of the place of their work or injury. Nor does it vary with the amount or percentage of work performed within the District. Rather it depends upon some substantial connection between the District and the particular employee-employer relationship, a connection which is present in this case. Such has been the essence of prior holdings of the Court of Appeals. *B. F. Goodrich Co.* v. *Britton,* 78 U. S. App. D. C. 221, 139 F. 2d 362; *Travelers Ins. Co.* v. *Cardillo,* 78 U. S. App. D. C. 392, 141 F. 2d 362; *Travelers Ins. Co.* v. *Cardillo,* 78 U. S. App. D. C. 394, 141 F. 2d 364. And as so applied, the statute fully satisfies any constitutional questions of due process or full faith and credit. *Alaska Packers Assn.* v. *Industrial Accident Commission,* 294 U. S. 532. Cf. *Bradford Elec. Co.* v. *Clapper, supra.*

Hence we conclude that the Deputy Commissioner had jurisdiction under the District of Columbia Act to entertain a claim by the widow of an employee who had been a resident of the District, who had been employed by a District employer and who had been subject to work assignments in the District. We accordingly turn to a consideration of the propriety and effect of the Deputy Commissioner's finding that Ticer's injury arose out of and in the course of his employment.

Our approach to that problem grows out of the provisions of the Longshoremen's Act, as made applicable by the District of Columbia Act. Section 19 (a) of the Longshoremen's Act provides for the filing of a "claim for compensation" and specifies that "the deputy commissioner shall have full power and authority to hear and determine all questions in respect of such claim." Thus questions as to whether an injury arose out of and in the course of employment necessarily fall within the scope of the Deputy Commissioner's authority. Section 21 (b) then provides that compensation orders may be suspended or set aside through injunction proceedings instituted in the federal district courts "if not in accordance with law."

In determining whether a particular injury arose out of and in the course of employment, the Deputy Commissioner must necessarily draw an inference from what he has found to be the basic facts. The propriety of that inference, of course, is vital to the validity of the order subsequently entered. But the scope of judicial review of that inference is sharply limited by the foregoing statutory provisions. If supported by evidence and not inconsistent with the law, the Deputy Commissioner's inference that an injury did or did not arise out of and in the course of employment is conclusive. No reviewing court can then set aside that inference because the opposite one is thought to be more reasonable; nor can the opposite

inference be substituted by the court because of a belief that the one chosen by the Deputy Commissioner is factually questionable.  *Voehl* v. *Indemnity Ins. Co., supra,* 166; *Del Vecchio* v. *Bowers,* 296 U. S. 280, 287; *South Chicago Co.* v. *Bassett,* 309 U. S. 251, 257–258; *Parker* v. *Motor Boat Sales,* 314 U. S. 244, 246; *Davis* v. *Department of Labor, supra,* 256; *Norton* v. *Warner Co.,* 321 U. S. 565, 568–569.

It matters not that the basic facts from which the Deputy Commissioner draws this inference are undisputed rather than controverted.  See *Boehm* v. *Commissioner,* 326 U. S. 287, 293.   It is likewise immaterial that the facts permit the drawing of diverse inferences.   The Deputy Commissioner alone is charged with the duty of initially selecting the inference which seems most reasonable and his choice, if otherwise sustainable, may not be disturbed by a reviewing court.   *Del Vecchio* v. *Bowers, supra,* 287.   Moreover, the fact that the inference of the type here made by the Deputy Commissioner involves an application of a broad statutory term or phrase to a specific set of facts gives rise to no greater scope of judicial review.   *Labor Board* v. *Hearst Publications,* 322 U. S. 111, 131; *Commissioner* v. *Scottish American Co.,* 323 U. S. 119, 124; *Unemployment Compensation Commission* v. *Aragon,* 329 U. S. 143, 153–154.   Even if such an inference be considered more legal than factual in nature, the reviewing court's function is exhausted when it becomes evident that the Deputy Commissioner's choice has substantial roots in the evidence and is not forbidden by the law.   Such is the result of the statutory provision permitting the suspension or setting aside of compensation orders only "if not in accordance with law."

Our attention must therefore be cast upon the inference drawn by the Deputy Commissioner in this case that Ticer's injury and death did arise out of and in the course

of his employment. If there is factual and legal support for that conclusion, our task is at an end.

A reasonable legal basis for the Deputy Commissioner's action in this respect is clear. The statutory phrase "arising out of and in the course of employment," which appears in most workmen's compensation laws, is deceptively simple and litigiously prolific.[4] As applied to injuries received by employees while traveling between their homes and their regular places of work, however, this phrase has generally been construed to preclude compensation. *Voehl* v. *Indemnity Ins. Co.*, *supra*, 169. Such injuries are said not to arise out of and in the course of employment; rather they arise out of the ordinary hazards of the journey, hazards which are faced by all travelers and which are unrelated to the employer's business. But certain exceptions to this general rule have come to be recognized. These exceptions relate to situations where the hazards of the journey may fairly be regarded as the hazards of the service. They are thus dependent upon the nature and circumstances of the particular employment and necessitate a careful evaluation of the employment terms.

---

[4] "The few and seemingly simple words 'arising out of and in the course of the employment' have been the fruitful (or fruitless) source of a mass of decisions turning upon nice distinctions and supported by refinements so subtle as to leave the mind of the reader in a maze of confusion. From their number counsel can, in most cases, cite what seems to be an authority for resolving in his favour, on whichever side he may be, the question in dispute." Lord Wrenbury in *Herbert* v. *Fox & Co.* [1916] 1 A. C. 405, 419. See also Dodd, Administration of Workmen's Compensation (1936), pp. 680–687; Horovitz, "Modern Trends in Workmen's Compensation," 21 Ind. L. J. 473, 497–564; Horovitz, Injury and Death Under Workmen's Compensation Laws (1944), pp. 93–173; Brown, " 'Arising Out Of And In The Course Of The Employment' In Workmen's Compensation Laws," 7 Wis. L. Rev. 15, 67, 8 Wis. L. Rev. 134, 217.

Under the District of Columbia Workmen's Compensation Act, at least four exceptions have been recognized by the Court of Appeals: (1) where the employment requires the employee to travel on the highways; (2) where the employer contracts to and does furnish transportation to and from work; (3) where the employee is subject to emergency calls, as in the case of firemen; (4) where the employee uses the highway to do something incidental to his employment, with the knowledge and approval of the employer. *Ward* v. *Cardillo,* 77 U. S. App. D. C. 343, 345, 135 F. 2d 260, 262. See also *Lake* v. *Bridgeport,* 102 Conn. 337, 128 A. 782. In performing his function of deciding whether an injury, incurred while traveling, arose out of and in the course of employment, the Deputy Commissioner must determine the applicability of these exceptions to the general rule. Here he decided that the second exception was applicable, that Ticer's employer had contracted to furnish transportation to and from work and had paid the expense of transportation in lieu of actually supplying the transportation itself. We cannot say that he was wrong as a matter of law.

There are no rigid legal principles to guide the Deputy Commissioner in determining whether the employer contracted to and did furnish transportation to and from work. "No exact formula can be laid down which will automatically solve every case." *Cudahy Packing Co.* v. *Parramore,* 263 U. S. 418, 424; *Voehl* v. *Indemnity Ins. Co., supra,* 169. Each employment relationship must be perused to discover whether the employer, by express agreement or by a course of dealing, contracted to and did furnish this type of transportation. For that reason it was error for the Court of Appeals in this case to emphasize that the employer must have control over the acts and movements of the employee during the transportation before it can be said that an injury arose out of and in the course of employment. The presence or

absence of control is certainly a factor to be considered. But it is not decisive. An employer may in fact furnish transportation for his employees without actually controlling them during the course of the journey or at the time and place where the injury occurs. *Ward* v. *Cardillo, supra.* And in situations where the journey is in other respects incidental to the employment, the absence of control by the employer has not been held to preclude a finding that an injury arose out of and in the course of employment. See *Cudahy Packing Co.* v. *Parramore, supra; Voehl* v. *Indemnity Ins. Co., supra.*[5]

Indeed, to import all the common law concepts of control and to erect them as the sole or prime guide for the Deputy Commissioner in cases of this nature would be to encumber his duties with all the technicalities and unrealities which have marked the use of those concepts in other fields. See *Labor Board* v. *Hearst Publications, supra,* 120–121, 125; *Hust* v. *Moore-McCormack Lines,* 328 U. S. 707, 723–725. That we refuse to do. "The modern development and growth of industry, with the consequent changes in the relations of employer and employee, have been so profound in character and degree as to take away, in large measure, the applicability of the doctrines upon which rest the common law liability of the master for personal injuries to a servant, leaving of necessity a field of debatable ground where a good deal must be conceded in favor of forms of legislation, calculated to establish new bases of liability more in harmony with these changed conditions." *Cudahy Packing Co.* v. *Parramore, supra,* 423.

Nor is there any other formal principle of law which would invalidate the choice made by the Deputy Com-

---

[5] See also *Gagnebin* v. *Industrial Comm'n,* 140 Cal. App. 80, 34 P. 2d 1052; *Keely* v. *Metropolitan Edison Co.,* 157 Pa. Super. 63, 41 A. 2d 420; *McKinney* v. *Dorlac,* 48 N. M. 149, 146 P. 2d 867; *Exelbert* v. *Klein & Kavanagh,* 243 App. Div. 839, 278 N. Y. S. 377.

missioner in this instance. The fact that Ticer was not being paid wages at the time of the accident is clearly immaterial. *Cudahy Packing Co. v. Parramore, supra.*[6] And it is without statutory consequence that the employer here carried out his contract obligation to furnish actual transportation by paying the travel costs and allowing the employees like Ticer to make the journey by whatever means they saw fit. To be sure, there are many holdings to the effect that, where the employer merely pays the costs of transportation, an injury occurring during the journey does not arise out of and in the course of employment; there must be something more than mere payment of transportation costs.[7] But assuming those holdings to be correct and assuming the Deputy Commissioner's findings in this case to be justified, there is more here than mere payment of transportation costs. It was found that Ticer's employer paid the costs as a means of carrying out its contract obligation to furnish the transportation itself. Where there is that obligation, it becomes irrelevant in this setting whether the employer

---

[6] "Nor is it ['in the course of employment'] limited to the time for which wages are paid. Indeed the fact that the workman is paid wages for the time when the accident occurs is of little, if any, importance." Bohlen, "A Problem in the Drafting of Workmen's Compensation Acts," 25 Harv. L. Rev. 328, 401, 402. *Turner Day & Woolworth Handle Co. v. Pennington,* 250 Ky. 433, 63 S. W. 2d 490.

[7] *Public Service Co. of Northern Illinois v. Industrial Commission,* 370 Ill. 334, 18 N. E. 2d 914; *Guenesa v. Ralph V. Rulon, Inc.,* 124 Pa. Super. 569, 189 A. 524; *Republic Underwriters v. Terrell,* (Tex. Civil App.) 126 S. W. 2d 752; *Orsinie v. Torrance,* 96 Conn. 352, 113 A. 924; *Kowalek v. New York Consolidated R. Co.,* 229 N. Y. 489, 128 N. E. 888; *Tallon v. Interborough Rapid Transit Co.,* 232 N. Y. 410, 134 N. E. 327; *Keller v. Reis & Donovan, Inc.,* 195 App. Div. 45, 185 N. Y. S. 741; *Levchuk v. Krug Cement Products Co.,* 246 Mich. 589, 225 N. W. 559. See annotations in 20 A. L. R. 319, 49 A. L. R. 454, 63 A. L. R. 469, 87 A. L. R. 250, 100 A. L. R. 1053. Cf. *Netherton v. Coles,* [1945] 1 All E. R. 227.

performs the obligation by supplying its own vehicle, hiring the vehicle of an independent contractor, making arrangements with a common carrier, reimbursing employees for the use of their own vehicles, or reimbursing employees for the costs of transportation by any means they desire to use. In other words, where the employer has promised to provide transportation to and from work, the compensability of the injury is in no way dependent upon the method of travel which is employed.[8] From the statutory standpoint, the employer is free to carry out its transportation obligation in any way the parties desire; and the rights of the employees to compensation are unaffected by the choice made.

Turning to the factual support for the Deputy Commissioner's inference that Ticer's injury arose out of and in the course of employment, we find ample sustaining evidence. Ticer's employment was governed by the terms of a long-standing agreement between Local Union No. 26, International Brotherhood of Electrical Workers (of which Ticer was a member) and the Institute of Electrical Contractors of the District of Columbia, Inc. (of which the employer was a member). Rule 15 (b) of the agreement provided that "Transportation and any necessary expense such as board and lodging shall be furnished for all work outside the District of Columbia."

The employer carried out in different ways this obligation to furnish transportation. On certain construction jobs in the past, it actually furnished a station wagon or a

---

[8] See *Donovan's Case*, 217 Mass. 76, 104 N. E. 431; *Breland* v. *Traylor Engineering & Mfg. Co.*, 52 Cal. App. 2d 415, 126 P. 2d 455; *Lehigh Nav. Coal Co.* v. *McGonnell*, 120 N. J. L. 428, 199 A. 906; *Burchfield* v. *Department of Labor and Industries*, 165 Wash. 106, 4 P. 2d 858; *Swanson* v. *Latham*, 92 Conn. 87, 101 A. 492; *Cary* v. *State Industrial Commission*, 147 Okla. 162, 296 P. 385; *Williams* v. *Travelers Ins. Co. of Hartford, Conn.*, (La. App.) 19 So. 2d 586; *Turner Day & Woolworth Handle Co.* v. *Pennington*, 250 Ky. 433, 63 S. W. 2d 490.

passenger car of its own to transport the employees.   At other times, however, it paid the employees an allowance to cover the cost of transportation in lieu of furnishing an automobile.   Where the latter course was followed, the written contract was not amended or changed in any way, the employer simply communicating with the union to ascertain the amount necessary to defray the cost of transportation.   The amount agreed upon affected all contractors in the Institute; and the cost of transportation was determined before the contractors made their respective bids.

On the Quantico Marine Base project, the sum of $2 per day was agreed upon as the transportation allowance in lieu of furnishing an automobile.   This amount was fixed after investigation into the cost of transportation by railroad and was paid to each employee, irrespective of his rate of pay, to cover the cost of transportation to and from the Marine Base.   No change was made in the written contract.

There was also evidence that the distant location of the Marine Base project, the hours of work and the inadequacy of public transportation facilities all combined to make it essential, as a practical matter, that the employer furnish transportation in some manner if employees were to be obtained for the job.   This was not a case of employees traveling in the same city between home and work. Extended cross-country transportation was necessary. And it was transportation of a type that an employer might fairly be expected to furnish.   Such evidence illustrates the setting in which the contract was drawn.

The Court of Appeals felt, however, that the original contract to furnish transportation was not followed and that a new oral contract to pay transportation expenses was substituted in its place.   We need not decide whether that view is justified by the record.   It is enough that there is sufficient evidence to support the Deputy Com-

missioner's view that the payment of transportation costs was merely one way of carrying out the original contract obligation to furnish the transportation itself.

We therefore hold that, under the particular circumstances of this case, the Deputy Commissioner was justified in concluding that Ticer's injury and death arose out of and in the course of his employment. And since the Deputy Commissioner had jurisdiction over this case, the resulting award of compensation should have been sustained.

*Reversed.*

MR. JUSTICE FRANKFURTER concurs in the result.

MR. JUSTICE JACKSON and MR. JUSTICE BURTON dissent.