### RICHARDSON v. CARDILLO.

United States District Court
S. D. New York.
June 8, 1951.

Murray Freeman, New York City, for plaintiff.

Irving H. Saypol, U. S. Atty. for the Southern Dist. of New York, New York City, for defendant (Louis Grossman, Asst. U. S. Atty., New York City, of counsel).

LEIBELL, District Judge.

Plaintiff has filed a motion for summary judgment—"* * * on the ground that the pleadings, affidavits, memos of law, Court orders, transcript of evidence of hearings had heretofore before the defendant herein on file in this action shows that there is no genuine issue as to any material fact and none of the defenses set forth in the answer is sufficient in law and that plaintiff is entitled to a judgment against the Todd Shipyards Corporation for compensation benefits under the provisions of the Longshoremen's and Harbor Workers' Compensation Act as a matter of law * * *."

By stipulation of the attorneys the defendant made a cross motion for a summary judgment.

This action was commenced January 4, 1951 under Section 21 of the "Longshoremen's and Harbor Workers' Compensation Act" T. 33 U.S.C.A. § 921(b), to set aside an order of the defendant, Deputy Commissioner, which rejected plaintiff's claim for compensation. After a very full hearing, at which the plaintiff and a co-worker testified, medical testimony was taken, and clinical and hospital records were received in evidence, the Deputy Commissioner made his Findings of Fact as follows:

"Findings of Fact

"That from May 3, 1945 to June 7, 1945 claimant above named was in the employ of the employer above named at Brooklyn, in the State of New York, in the Second Compensation District, established under the provisions of the Longshoremen's and Harbor Workers' Compensation Act, and that the liability of the employer for compensation under said Act was insured by The Fidelity & Casualty Company of New York; that during such period the claimant herein was employed as an out-side painter for the employer, aboard the S.S. 'Saturnia' which was undergoing repair at the employer's dry dock at Brooklyn, New York; that on September 19, 1949 a claim for compensation was filed with the Deputy Commissioner, wherein claimant alleged that he contracted pulmonary tuberculosis as a result of 3 days' exposure to 'nasty, cold and wet conditions' while so employed, and has been disabled as a result thereof; that the employer had knowledge of the claimant's condition and failed to file a report with the Deputy Commissioner and that the claim for compensation is, therefore, timely filed; that early in June 1945 claimant reported to the employer's dispensary complaining of a cold, sore throat and hoarseness; that he was advised to go to his own physician who treated him for laryngitis; that on June 11, 1945 the claimant went to Harlem Chest Clinic where he gave a history of cough and hoarseness of one month's duration; that X-ray taken at the said clinic disclosed chronic pulmonary tuberculosis, moderately advanced; that the history given by the claimant did not include occupational exposure; that on June 25, 1945 the claimant was admitted to Bellevue Hospital where he gave a history of lesion having been discovered in the right lung in 1942, also a history of sinusitis for many years and of acute tonsillitis for several months prior to his admission on June 11, 1945; that claimant also gave a history of having developed a cough at night with sore throat five weeks prior to said admission, with hoarseness, loss of weight of 14 pounds; that no history of occupational exposure was given to Bellevue Hospital; that upon examination a diagnosis was made of chronic productive tuberculosis with fibrotic process in the right upper lobe and chronic sinusitis; that he was given bed rest and was discharged at his request on July 6, 1945; that on September 14, 1945 claimant entered Seaview Hospital where he gave a history of having frequent colds; that he was X-rayed and examined after which a diagnosis of chronic pulmonary tuberculosis, far advanced, was made; that claimant remained in the hospital until October 15, 1945; that the

claimant thereafter went home, where he rested for several weeks, following which his tubercular condition became quiescent and sputum was negative; that he thereafter worked on various ships as a seaman, without complaint, until March 1948; that on October 25, 1948 claimant was admitted to the United States Marine Hospital, Stapleton, Staten Island, where he gave the following history: tuberculosis in 1942, hospitalization in 1945 followed by return to Puerto Rico, and bed rest, at which time x-rays showed closing of cavities, sputum negative and tubercular condition quiescent. Returned to United States and worked on various ships. Checkups made thereafter to January 1948 were negative. Claimant also stated that he was a symptomatic until one month ago when he developed a cold, sinus trouble, a cough and hemoptysis. He admitted 'wild living' and 'working and playing to excess for past two months which led to loss of weight and general fatigue'; that x-rays disclosed bilateral tuberculosis; that claimant remained in said hospital until November 2, 1948 and was thereafter transferred to other Marine Hospitals, finally returning to the Marine Hospital at Ellis Island, where he is now confined under treatment for bilateral tuberculosis; that on April 7, 1942, several years prior to his employment with the employer herein, claimant was admitted to the United States Marine Hospital at Ellis Island where he gave a history that on January 23, 1942 while working aboard a ship he fell down a flight of stairs injuring his right chest, specks of blood in expectoration and loss of weight of 10 pounds in past six months; also that one month prior to the said admission he had developed sore throat with some fever; that x-rays taken at the said hospital disclosed a dense shadow in the right lung due to early pulmonary involvment probably of tubercular nature; that examination further disclosed upper respiratory infection and chronic sinusitis; that claimant was discharged from said hospital on April 20, 1942 and was readmitted on April 28, 1942 because of acute pharyngitis and sinusitis; that he was again discharged on May 1, 1942; that

claimant was instructed to return in six weeks for further observation for tuberculosis but that he did not return; that he thereafter worked on and off as a bartender and at various other employments, and finally on May 3, 1945 was employed as an outside painter for the employer herein; that the claimant had an early involvment of tuberculosis of the right lung in 1942 prior to his employment with the employer herein, which condition was not treated and which progressed naturally to other stages as time went on; that the claimant's tuberculosis was not contracted by reason of his employment with the employer herein nor is the said condition related to such employment.

"Upon the foregoing facts, it is ordered by the Deputy Commissioner that the claim be, and it is hereby Rejected for the following reason:

"Claimant's tuberculosis was not caused by or related to the employment."

■ Before answering the complaint herein, the defendant made a motion before Judge McGohey to dismiss the complaint under Rule 12(b), Fed.Rules Civ. Proc. 28 U.S.C.A., on the grounds that the complaint did not state a claim on which relief could be granted. The motion was denied without opinion. The defendant then served an answer. The order signed by Judge McGohey simply determined that the complaint was legally sufficient. That motion did not bring up for review the decision of the Deputy Commissioner and the records of the hearings on which his decision was based. On this present motion for a summary judgment, the complete record is before the Court.

■ Before considering plaintiff's argument of what he considers were the facts established by the evidence before the Deputy Commissioner, it may be well to note the very limited extent of the judicial review which this Court may exercise in an action of this kind. Kwasizur v. Cardillo, 3 Cir., 175 F.2d 235. The Deputy Commissioner in performing the functions of his office, is a quasi judicial officer, who has the authority to hear and determine. § 19(a) of the Act. In con-

ducting a hearing the Deputy Commissioner is not bound "by common law or statutory rules of evidence". § 23 of the Act. With respect to any of his findings of fact challenged in an action of this kind, this court considers whether or not there was substantial evidence to support them. Steamship Terminal Operating Corp. v. Schwartz, 2 Cir., 140 F.2d 7.

The majority opinion of the Supreme Court in Cardillo v. Liberty Mutual Co., 330 U.S. 469, 477, 67 S.Ct. 801, 806, 91 L.Ed. 1028, stated: "In determining whether a particular injury arose out of and in the course of employment, the Deputy Commissioner must necessarily draw an inference from what he has found to be the basic facts. The propriety of that inference, of course, is vital to the validity of the order subsequently entered. But the scope of judicial review of that inference is sharply limited by the foregoing statutory provisions. If supported by evidence and not inconsistent with the law, the Deputy Commissioner's inference that an injury did or did not arise out of and in the course of employment is conclusive. No reviewing court can then set aside that inference because the opposite one is thought to be more reasonable; nor can the opposite inference be substituted by the court because of a belief that the one chosen by the Deputy Commissioner is factually questionable." (Citing cases).

The main issues in this case are whether the plaintiff had a tubercular condition before he was employed by the Todd Shipyards on May 3, 1945; and whether the active tubercular condition which an X-ray disclosed on June 11, 1945 was caused by the character of the work he was required to perform and the conditions under which he was obliged to work at the Todd Shipyards.

Plaintiff denies that he ever knew that he had a tubercular condition before June 1945. The hospital records show that he had a tubercular right lung as far back as April 1942. Some medical testimony was to the effect that there was no causal relationship between the disability which was found in June 1945 and the nature of his work and the conditions under which he performed his work in the five weeks he worked for Todd (between May 3rd and June 7, 1945). Other medical testimony was to the contrary. The Deputy Commissioner's finding that there was no causal relationship between the claimant's disability and the employment, has substantial evidence to support it. That is sufficient to support the Deputy Commissioner's order. In Eschbach v. Contractors, Pacific Naval Air Bases, 7 Cir., 181 F.2d 860, the Deputy Commissioner found that there was no causal relationship between the employment and the disability and his finding was sustained. In another case, Contractors v. Pillsbury, 9 Cir., 150 F.2d 310, where the Deputy Commissioner found that the claimant's work caused a reactivation of an arrested case of tuberculosis, the reviewing court sustained the order of the Deputy Commissioner because there was substantial evidence to support it. In the case at bar the Deputy Commissioner found "that the claimant had an early involvement of tuberculosis of the right lung in 1942 prior to his employment with the employer herein (Todd), which condition was not treated and which progressed naturally to other stages as time went on; that the claimant's tuberculosis was not contracted by reason of his employment with the employer herein nor is the said condition related to such employment". And the Deputy Commissioner rejected Richardson's claim for the reason that "Claimant's tuberculosis was not caused by or related to the employment".

The claim for compensation was not filed until September 19, 1949. A claim had been filed at an earlier date with the State Workmen's Compensation Commission, but the State Commission dismissed the claim on June 4, 1946, for want of jurisdiction, and because the claimant did not establish an occupational disease.

The plaintiff's claim as filed with the United States Compensation Commission on September 20, 1949 gave the following answers to questions 14, 15, 16 and 17;

"14. Date of accident or first illness: Unknown date in May, 1945.

"15. How did the accident happen or how was occupational disease caused?

During the war I was compelled constantly for 3 days to be exposed to cold, wet and nasty conditions while painting the S.S. Saturnia.

"16. State fully nature of injury or occupational disease: I suffered pulmonary tuberculosis as a result of having been compelled during the war constantly for 3 days to be exposed to nasty, cold and wet conditions, painting the S.S. Saturnia.

"17. On what date did you stop work because of injury? Date uncertain. June or July 1945."

Plaintiff's attorney in this action, who appeared for plaintiff on the claim he filed with the United States Compensation Commission in September 1949, severely criticizes the findings and conclusions of the Deputy Commissioner who conducted the hearings. He complains that the Commissioner concluded (1) that plaintiff's hospital examination in April 1942 indicated that he had a lesion in the right lung in 1942, and (2) that plaintiff when admitted to hospitals in June and October 1945, gave a history of an involvement of tuberculosis in 1942. What the Deputy Commissioner stated as the history given by plaintiff in 1945, is taken from entries made in the hospital reports at that time.

With respect to plaintiff's lung condition in April 1942, X-rays taken at the time showed, according to the roentgenologist's report of April 11, 1942, "a dense shadow in the periphery of right first interspace with faint increased density in extreme right apex due to early pulmonary involvment of right first interspace, probably of tuberculous nature". The sputum examination was negative for tubercle bacilli in April 1942. Dr. Morris Kritchman who examined and treated him in April 1942 at the Marine Hospital at Ellis Island testified at the hearing before the Deputy Commissioner. He stated that he could not, from what was known in April 1942, say at that time that the claimant had an active pulmonary tuberculosis, but that they thought the patient should be under observation. (This the claimant did not submit to.) At the time the X-ray was taken in April 1942 tuberculosis was suspected.

Dr. Max Taschman, who examined claimant on behalf of the insurer in May 1946, and in March 1947 treated plaintiff with the approval of the insurer, testified that his professional specialty has been tuberculosis and that X-rays taken then showed TB in both lungs with conties in the right lung. He testified that a lesion shown in the X-ray of April 1942, in view of what happened afterwards, was unquestionably tubercular. As to the shadow shown on the X-ray of April 1942, in the upper right apex, Dr. Taschman stated: "Hindsight is so much easier than foresight, and when we see that shadow in view of what happened afterwards, we know better what we are dealing with." He also testified that in his opinion the claimant actually had a pathology of the lung in 1942.

Plaintiff's counsel complains that the Deputy Commissioner did not give any weight to the testimony of claimant's witness, Dr. Messenger. He was a general practitioner, not a specialist. He had never examined the claimant. He had studied the hospital records, from April 1942 on. He testified, in answer to a hypothetical question, that in his opinion the claimant's tubercular condition was causally related to his employment in May 1945, when plaintiff asserts he was thoroughly soaked with rain for several days and was exposed to the fumes of heavy marine paint. He expressed the view that the lesion found in the apex in 1942 was lighted up by the type of work claimant did in May 1945. He assumed that the claimant did not have active tuberculosis before 1945. Tuberculosis is a germ disease.

The Deputy Commissioner was warranted in concluding from the testimony and the hospital records before him, that the claimant had a tubercular condition in April 1942, although it was inactive at the time, and that his active tubercular condition developed in the intervening years, before his employment by Todd. X-rays taken at the Harlem Clinic on June 11th and June 12th, 1945 "revealed a caseous pneumonia infiltration involving the right upper lobe." The diagnosis was "chronic pulmonary tuberculosis, moderately ad-

vanced". The X-ray taken at Bellevue June 26, 1945 showed "Chronic productive tuberculosis with fibrotic process in the right upper lobe. Retraction of the traches and mediastinal contents to the right". The left lung was clear. An X-ray of September 17, 1945 showed "The right lung contains a caseous pneumonic infiltration in the apex and subspical region with a cavity in the axillary portion of the 1st Anterior interspace and with local dissemination in the remainder of the upper lobe".

Plaintiff's attorney's contentions may be stated in his own words as follows: That the Deputy Commissioner "should have based his Findings upon the testimony of Doctor Messenger who testified that plaintiff's present pulmonary condition was causally related to his employment" and that "Doctor Taschman's testimony as to causal relatively should have been disregarded by the Deputy Commissioner". The weight to be given to the testimony of those witnesses was for the Deputy Commissioner to determine. He was not bound to accept the opinion or theory of any particular medical examiner. He considered all the evidence and drew his own inference therefrom.

I have concluded that the order of the Deputy Commissioner is amply sustained by the evidence; that plaintiff's motion for a summary judgment setting aside the order should be denied and that defendant's motion for summary judgment dismissing the complaint on the merits should be granted.

Settle an order accordingly.