335 So.2d 568 (1976)
Joycie T. BOLINGER, Petitioner,
v.
DIVISION OF RETIREMENT, STATE DEPARTMENT OF ADMINISTRATION, and State Retirement Commission, Respondents.
No. AA-323.
District Court of Appeal of Florida, First District.
July 13, 1976.
Rehearing Denied August 16, 1976.
*569 Eric E. Wagner and George A. Stelogeannis, Ocala, for petitioner.
L. Keith Pafford and Catherine M. Washington, Tallahassee, for respondents.
SMITH, Judge.
Bolinger petitions for review of an order of the State Retirement Commission which at the instance of respondent Division of Retirement, Department of Administration, partially denied Bolinger's application for disability retirement from state employment. Ch. 75-248, Fla.Laws, § 121.23, F.S. 1975. The Commission ordered that Bolinger is "totally and permanently disabled" and so entitled to disability benefits from the Florida Retirement System but that she is not entitled to enhanced benefits payable to one so disabled "in line of duty." Sec. 121.091(4)(a), (d), F.S. 1975.[1] The Retirement Commission did not disturb findings of fact recommended by a hearing officer[2] pursuant to the Administrative Procedure Act, § 120.57(1) (b)9, F.S. 1975, but rejected the hearing officer's recommended conclusion of law to the effect that Bolinger was permanently and totally disabled in line of duty. Bolinger's petition seeks reversal of the Commission's order denying her "in line of duty" disability benefits.
The findings of fact reported by the hearing officer to the Retirement Commission in his recommended order became binding on the Commission in the absence of an explicit Commission determination they were not based on competent substantial evidence or were the product of proceedings not comporting with essential requirements of law. Sec. 120.57(1)(b)9, F.S. 1975. The hearing officer's findings *570 therefore became in effect the agency's findings, and as such they are entitled to similar respect in our review of the matter. Secs. 120.68(10), 121.23(4), F.S. 1975.
Bolinger, a 59-year old woman having 8 years of creditable service under the Florida Retirement System, was employed as a housemother at McPhearson School for Girls near Ocala. She tripped over a tree root on uneven ground and fell while escorting a group of girls under her care from the dining hall to the dormitory. Her rib was broken and she later complained of headaches, neck pains, low back pains and, finally, leg pains. She was unable to continue working. Competent evidence supports the finding that Bolinger's fall aggravated congenital spondylolisthesis in her low back and resulted finally in disability for which surgery is not advised, in the opinion of the physicians, because her arteriosclerosis and aortic aneurysm make such treatment dangerous.
The Division of Retirement seeks to overcome the implications of these facts and to sustain the Commission's decision by two arguments: first, that Bolinger's radiating leg pain was caused by a course of chiropractic manipulation rather than by her fall; and second, that it will place an undue and unintended burden on the Florida Retirement System to award enhanced "line of duty" disability benefits to employees like Bolinger who are getting older, have congenital or other long-standing physical defects which are likely to disable on relatively mild aggravation, and may suffer still other infirmities, due to the ravages of age or other causes independent of the employment, which make effective treatment difficult or impossible.
The Division's first argument is a veiled attack on the hearing officer's findings of fact which the Retirement Commission left undisturbed and are supported by substantial competent evidence. We will not reweigh the evidence.
The Division's second argument must likewise be rejected. There may well be reason for apprehension concerning the actuarial soundness of a retirement system that, regardless of length of service, pays enhanced disability benefits to an employee whose prior physical condition makes her peculiarly susceptible to a disabling illness or injury and peculiarly untreatable for it. But that is a legislative question, as is whether an employee should receive substantially more retirement benefits, in addition to workmen's compensation,[3] if the disabling fall happens at work rather than at home. The Florida Retirement System Act defines "disability in line of duty" as
"... an injury or illness arising out of and in the actual performance of duty required by a member's employment during his regularly scheduled working hours or irregular working hours as required by the employer." Sec. 121.021(13), F.S. 1975.
The 1970 Legislature which enacted chapter 121 deliberately selected a definition for "disability in line of duty" which closely resembles the "deceptively simple and litigiously prolific"[4] test for workmen's compensation coverage: "arising out of and in the course of employment," § 440.09(1), F.S. 1975. The legislature may thus be presumed to have intended that, as in the workmen's compensation context, "the words `arising out' refer to the origin of the cause" of the injury, and that "in the actual performance of duty," like "in the course of employment" in workmen's compensation acts, "refer[s] to the time, *571 place, and circumstances under which the accident occurs." Bituminous Cas. Corp. v. Richardson, 148 Fla. 323, 325, 4 So.2d 378, 379 (1941).
The linkage between workmen's compensation concepts and the Retirement System Act definition of "in line of duty" disability is underscored by the provision in § 121.021(13) that the administrator of the Division of Retirement, when initially passing on applications for such disability benefits, may require appropriate proof of the "cause of any such injury or illness" and, in that connection, that "[w]orkmen's compensation records under the provisions of chapter 440 may also be used." Legislative purposefulness in the choice of a workmen's compensation test is indicated also by the existence of another statute, when the Retirement System Act was enacted, preventing duplication of workmen's compensation and retirement disability benefits payable to public employees. Sec. 440.09(4), F.S. 1971; 1973 Op.Att'y Gen. 104, no. 073-62. The law prohibiting duplicate benefits was repealed three years later by ch. 73-127, § 2, Fla.Laws. But compare § 440.15(10), F.S. 1975, which reduces workmen's compensation benefits duplicating social security disability benefits payable under 42 U.S.C. § 423.
Judged under judicial standards which have developed abundantly since the Florida compensation act was passed in 1935, Bolinger's fall and resulting injury had a sufficient causal relationship with her employment to be characterized as "arising out of" it. Damon v. Central Hotel, 135 So.2d 204 (Fla. 1961); Protectu Awning Shutter Co. v. Cline, 154 Fla. 30, 16 So.2d 342 (1944); Looney v. W & J Constr. Co., 289 So.2d 723 (Fla. 1974). That conclusion is consistent also with the single decision we are aware of which applies § 121.021(13). In re Nelson, 288 So.2d 218 (Fla. 1974). Clearly, Bolinger's injury also occurred "in the actual performance of duty." The Commission erred in denying Bolinger "in line of duty" disability benefits.
The Commission's order is quashed and the case remanded for proceedings consistent with our decision.
BOYER, C.J., and HODGES, JOHN G., Associate Judge, concur.
NOTES
[1] One disabled "in line of duty" is entitled to a monthly disability benefit "regardless of service," whereas one otherwise disabled must have completed five years of creditable service. More significant for purposes of Bolinger's claim, the minimum benefit for one disabled "in the line of duty" is 42 percent of average monthly compensation, while the benefit for one disabled not "in the line of duty" is 25 percent of average monthly compensation. Sec. 121.091(4) (d), F.S. 1975.
[2] Bolinger's claim was ready for hearing after 1975 legislation created the State Retirement Commission, ch. 75-248, Fla.Laws, but before its members were appointed by the Governor. The Division of Retirement and Bolinger therefore submitted the dispute to a hearing officer assigned by the Division of Administrative Hearings, Department of Administration. Sec. 120.57(1) (a), F.S. 1975. Neither of the adversaries here, Bolinger and the Division of Retirement, is in a position to complain that the hearing should have been before the State Retirement Commission rather than a hearing officer. See § 120.57(1) (a) 1, (b)3, § 121.23(2), F.S. 1975.
[3] An industrial claims judge found Bolinger's injury and disability arose out of and in the course of her employment, within the meaning of § 440.09(1), F.S. 1975, and workmen's compensation benefits were ordered paid.
[4] Cardillo v. Liberty Mut. Ins. Co., 330 U.S. 469, 479, 67 S.Ct. 801, 91 L.Ed. 1028 (1947).