94 N.J. Super. 326 (1967)
228 A.2d 104
LAWRENCE R. WENZEL, PETITIONER-APPELLANT,
v.
ZANTOP AIR TRANSPORT, INC., RESPONDENT-RESPONDENT.
Superior Court of New Jersey, Union County Court, Law Division.
Decided March 15, 1967.
*327 Mr. John W. Devlin for appellant (Messrs. O'Brien, Devlin & Shaw, attorneys).
Mr. Andrew Lawrie for respondent (Messrs. Lawrie & Jennings, attorneys).
WEIDENBURNER, J.S.C. (temporarily assigned).
The primary issue in this workmen's compensation appeal is whether New Jersey has jurisdiction of the cause. The judge of compensation dismissed petitioner's claim on the ground that *328 New Jersey lacks jurisdiction because neither the contract of employment was made nor the work-connected accident occurred in this State.
The petitioner is a commercial airplane pilot, who was born and raised in New Jersey. He testified that he had owned and maintained his home in this State for a period of 15 years prior to his accident, but the record is barren of evidence of who lived there or when petitioner last lived in or visited it prior to the accident; that he maintained a banking account in New Jersey in which he deposited checks received from respondent and that he had voted in this State and never voted elsewhere, although he had not voted here during the five years preceding the accident because his employment required him to be outside the State on election day.
Petitioner's testimony disclosed that during the years 1958 to the date of his accident in 1963 he was employed by various airlines and flying services, including respondent, and resided in proximity to his various bases throughout said period at Greenwood, Mississippi; Piggott, Arkansas; Warner-Robbins, Georgia; Macon, Georgia; Detroit, Michigan; Ontario, California, and Hill Field, Utah.
On or about June 23, 1960, while petitioner was employed by an air carrier with a base in Georgia and living in an apartment near that airport, he telephoned respondent's office in Detroit, Michigan, seeking employment. As a result of this telephone conversation petitioner went to respondent's office in Detroit and was hired as a pilot. A written employment contract was subsequently executed by the parties on August 23, 1960 in which petitioner gave his address as 233 North Jackson Avenue, North Plainfield, New Jersey.
When petitioner began his employment with respondent, he was assigned to a base at Warner-Robbins, Georgia, and flew a route from there to Charleston, South Carolina, Dover, Delaware, McGuire Air Force Base, New Jersey, and Middletown, Pennsylvania, and return. He testified that 20% to 25% of his flight time was "involved in trips to New Jersey," although in several months such flights occupied him as much *329 as 35% to 100% of his total work time. In May 1962 respondent assigned petitioner to Detroit, Michigan, and he began to fly to and from Newark, New Jersey, where respondent maintained an office and a staff at the Newark Airport. Until the end of 1962 he said that the percentages of his time spent on flights in and out of New Jersey varied monthly from 12% to 30% of his total time. In January 1963 petitioner's base was changed from Detroit to Ontario, California, but soon thereafter, at the suggestion of respondent's chief pilot in California, petitioner went to Utah "to be able to fly more." Between the date of his assignment to the California base and the date of the work-connected accident, petitioner did not spend any time on flights in or out of New Jersey. While on his second trip out of Hill Field, Utah, petitioner's plane crashed on February 16, 1963 at Payallup, Washington.
In terms of flying time the evidence disclosed that petitioner logged a total flight time of 495 hours during the year 1960, of which 6 1/2 hours were spent in flying in and over this State. In 1961 petitioner's total flying time was 917 1/2 hours, of which 18 hours were logged on flights in and over New Jersey. In 1962 petitioner flew 957 1/2 hours, of which 25 3/4 hours were in the air over this State. To the date of petitioner's accident in 1963 in Washington he had logged a total of 46 hours of flying time, none of which was spent in flights over this State.
Petitioner testified that he stayed overnight in New Jersey on 11 of the trips which took him into and out of this State during 1962. He said that he stayed at hotels on all of those occasions, although we judicially notice that McGuire Air Force Base and Newark Airport, which are the only two locations to which petitioner flew in this State, are within one hour's driving time from the community in which petitioner claims residence.
Petitioner was hospitalized in Washington until October 8, 1963, during which period the Industrial Commission of Utah had assumed jurisdiction of the matter of compensation to petitioner at the request of respondent. While so *330 hospitalized petitioner sought and was granted authorization by the Utah Commission to go to his home in New Jersey upon his discharge from the hospital. Respondent's insurance carrier then gave petitioner permission to receive medical attention in this State and paid the cost of his transportation to New Jersey.
Petitioner consulted several physicians in New Jersey, including those suggested by respondent's representatives, one of whom was a Dr. Kessler. The latter recommended that petitioner enroll in Kessler Institute for rehabilitation treatment, but respondent's representative informed petitioner in July 1964 that "[a]s a result of our medical information, we cannot give authorization for you to enter the Kessler Institute." The New Jersey claim petition for compensation was filed one month later.
Petitioner testified that he has also made application for compensation benefits in Utah, Michigan, California and Washington. The Washington authorities informed petitioner that its statute did not cover air traffic accidents and that, in any event, his claim was barred by its one-year statute of limitations. Michigan advised petitioner that he was not entitled to benefits from that state if he were receiving benefits from Utah, and California's representatives have stated "that they do not understand the connection between the claim" in that jurisdiction since the accident occurred in Washington. Petitioner has not cashed compensation payment checks received from Utah and the proceedings there "are being held in abeyance, pending the outcome of the matter in New Jersey."
Our highest court has repeatedly approved the legal philosophy that a broad, liberal interpretation should be given to coverage under our Workmen's Compensation Act "in order to insure the accomplishment of the statutory remedial goals." Stellmah v. Hunterdon Co-op. G.L.E. Serv., Inc., 47 N.J. 163, 169 (1966); Close v. Kordulak Bros., 44 N.J. 589, 604 (1965); Cuna v. Board of Fire Com'rs, Avenel, 42 N.J. 292, 298 (1964).
*331 The fact that petitioner has filed several applications for compensation benefits in other jurisdictions and received and accepted medical and hospital benefits under the proceeding instituted in Utah by the respondent does not preclude him from electing to pursue his remedy for compensation benefits in New Jersey. Cramer v. State Concrete Corp., 39 N.J. 507, 511 (1963); Wilson v. Faull, 27 N.J. 105, 116-117 (1958); Rivera v. Green Giant Co., 93 N.J. Super. 6, 13 (App. Div. 1966), certification granted 48 N.J. 443 (1967). It has been said that "[a]s a matter of fairness the employee should receive `the highest available amount of compensation' to which he is entitled, so long, of course, as credit is given for payments received." Cramer v. State Concrete Corp., supra, 39 N.J., at p. 511. This principle, which allows the employee a choice of forum to seek the highest available amount of compensation, "is consonant with the high-minded remedial purposes underlying compensation enactments." Boyle v. G. & K. Trucking Co., 37 N.J. 104, 112 (1962); Rivera v. Green Giant Co., supra, 93 N.J. Super., at p. 13.
In the past our courts have endeavored to find either contract of employment or injury in this State as a basis for assuming jurisdiction. As recently as Rivera v. Green Giant Co., supra, it was said:
"* * * If the situs of both the injury and the employment undertaking is outside of New Jersey, our compensation laws are generally not applicable. Franzen v. E.I. Dupont de Nemours & Co., 128 N.J.L. 549 (Sup. Ct. 1942). Crawford v. Trans World Airlines, 27 N.J. Super. 567, 570 (Cty. Ct. 1953). Cf. Bowers v. American Bridge Co., 43 N.J. Super. 48, 57 (App. Div. 1956), affirmed o.b. 24 N.J. 390 (1957)." (93 N.J. Super., at p. 11).
Petitioner recognizes the limits of jurisdiction established in our case law to date but vigorously contends that jurisdiction should be assumed in the instant case because the petitioner "was domiciled in New Jersey" and had spent a sufficient portion of his employment time in New Jersey prior to the accident to establish an employer-employee relationship *332 within this State. His conclusion is that these facts furnish New Jersey with sufficient interest in the employment relationship to justify the assumption of jurisdiction under the expanding jurisdictional concepts reflected in the decisions dealing with state jurisdiction over foreign corporations and other nonresidents by substituted service. Respondent contends that the proofs do not establish that petitioner's "residence" was in this State and that, in any event, "residence" alone is not a sufficient basis for New Jersey to assume jurisdiction.
This court agrees that the decisions of our appellate courts as to the bases for jurisdiction in workmen's compensation cases should not be interpreted as a refusal to recognize that there are other valid bases for jurisdiction in appropriate cases. The judicial recognition may be delayed, as it has been in analogous jurisdictional areas, but it is not precluded by earlier decisions on different factual complexes. We have but to observe the expansion of jurisdictional concepts of due process in state jurisdiction in civil actions against foreign corporations and other nonresidents to appreciate that the law is not immutable. In McGee v. International Life Ins. Co., 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957), the court held that a single contract of reinsurance by a Texas insurance company in California provided the "substantial connection" with the latter state to satisfy the requirements of due process in a California action against the Texas Company in which service was made on it in its home state. After reviewing the earlier cases Mr. Justice Black explained the court's decision as follows:
"Looking back over this long history of litigation a trend is clearly discernible toward expanding the permissible scope of state jurisdiction over foreign corporations and other nonresidents. In part this is attributable to the fundamental transformation of our national economy over the years. Today many commercial transactions touch two or more States and may involve parties separated by the full continent. With this increasing nationalization of commerce has come a great increase in the amount of business conducted by mail across state lines. At the same time modern transportation and *333 communication have made it much less burdensome for a party sued to defend himself in a State where he engages in economic activity." (355 U.S., at pp. 222-223, 78 S.Ct., at p. 201)
The increasing realism in such judicial determinations of questions of jurisdiction has been recognized with approval by our appellate courts. See Hoagland v. Springer, 75 N.J. Super. 560 (App. Div. 1962), affirmed o.b. 39 N.J. 32 (1962), and cases there cited. In the last-cited case Judge Goldmann, quoting from Gray v. American Radiator & Standard Sanitary Corp., 22 Ill.2d 432, 433, 176 N.E.2d 761, 766 (Sup. Ct. 1961) observed that:
"* * * unless these changes are recognized, `jurisdictional concepts which may have been reasonable enough in a simple economy lose their relation to reality, and injustice rather than justice is promoted. Our unchanging principles of justice, whether procedural or substantive in nature, should be scrupulously observed by the court. But the rules of law which grow and develop within those principles must do so in the light of the facts of economic life as it is lived today. Otherwise the need for adaptation may become so great that basic rights are sacrificed in the name of reform, and the principles themselves become impaired.'" (at p. 568).
Later in the same case the court noted:
"The trend in defining due process is away from the court having immediate power over a defendant and toward the court in which both parties may conveniently settle their dispute. And in defining due process of law, the trend is away from emphasis on territorial limitations and toward emphasis on providing adequate notice and opportunity to be heard." Ibid.
The writers recognize that there are other valid bases for jurisdiction in the field of workmen's compensation law in addition to the place of employment or injury. In 2 Larson, Law of Workmen's Compensation, ¶ 86.10, p. 368, the author notes:
"There are six grounds on which the applicability of the particular compensation act has been asserted; they are that the local state is the:

*334 (1) Place where the injury occurred;
(2) Place of making the contract;
(3) Place where the employment relationship exists or is carried out;
(4) Place where the industry is localized;
(5) Place where the employee resides; or
(6) Place whose statute the parties expressly adopted by the contract.
When one of these falls within the local state, and some or all of the other occur in another state, a question arises whether the local state can apply its statute without being accused of denying full faith and credit of the statute of the other. As matters now stand, it seems quite clear that the state which was the locus of any one of the first three theories  contract, injury or employment  and perhaps also of the next two  employee residence and business localization  can constitutionally apply its statute if it wants to."
See also Rothman, "Conflict of Laws in Labor Matters in the United States," 12 Vand. L. Rev. 997 (1959); Leflar, "The Law of Conflict of Laws," ¶ 135 (1959), and Langschmidt, "Choice of Law in Workmen's Compensation," 24 Tenn. L. Rev. 322, 326 (1956).
However, residence alone, it has been noted, is not a sufficient basis for jurisdiction. See 2 Larson, op. cit., ¶ 87.60, pp. 393-394 and cases there cited, where it is stated:
"The place of the employee's residence, although having a very real interest as the community which might have to support a disabled and uncompensated workman, has never either by judicial decision or statute been held entitled to apply its statute on the strength of the residence factor alone. In combination with other tests, however, it has at times played an important part."
Petitioner relies heavily on Cardillo v. Liberty Mutual Insurance Company, 330 U.S. 469, 67 S.Ct. 801, 91 L.Ed. 1028 (1947), but this decision is patently distinguishable. In Cardillo the employee was a resident of the District of Columbia, was hired there and had worked on various projects in and around the District until he was assigned to a project in nearby Virginia to which he commuted daily and where he was injured. In upholding the jurisdiction of the District of Columbia the court said:
*335 "The jurisdiction of the Deputy Commissioner to consider the claim in this case rests upon the statement in the District of Columbia Act that it `shall apply in respect to the injury or death of an employee of an employer carrying on any employment in the District of Columbia, irrespective of the place where the injury or death occurs; * * *'" (330 U.S., at p. 474, 67 S.Ct., at p. 805).
In the light of the instructions from our appellate courts to give a liberal interpretation to coverage under our statute, and the expansion of jurisdictional concepts of due process, our courts might appropriately provide the forum for a compensation action by a resident when more than casual employment services were performed in New Jersey, although the hiring contract and place of injury were elsewhere. The instant case, however, is not an appropriate one for recognition of this basis for jurisdiction. Aside from the small proportion of employment services rendered by petitioner in New Jersey, the evidence fails to establish that he was a resident of this State at the time of injury.
Petitioner's contention, if adopted, would amount to a decision that "domicile," as distinguished from "residence," may, when employment service has been rendered in the state of domicile, support a finding of jurisdiction in the domiciliary state. None of the decisions or texts in this area of the law have adopted or advocated any such extreme extension of jurisdictional bases.
Recognizing that the word "residence" has received so many definitions that they are almost beyond "classification in any satisfactory manner," Collins v. Yancey, 55 N.J. Super. 514, 518 (Law Div. 1959); Continos v. Parsekian, 68 N.J. Super. 54, 59 (App. Div. 1961), it is not a convertible term with "domicile." State v. Garford Trucking, Inc., 4 N.J. 346, 353 (1950); Kurilla v. Roth, 132 N.J.L. 213 (Sup. Ct. 1944). In the last cited case the court said:
"* * * But, `domicile' and `residence' or `abode' or `usual place of abode' are not convertible terms. `Domicile' is the relation which the law creates between an individual and a particular locality or country. In a strict legal sense, the domicile of a person is the place where he has his true, fixed, permanent home and principal establishment, *336 and to which, whenever he is absent, he has the intention of returning, and from which he has no present intention of moving. * * * And every person, in all circumstances and conditions, is deemed to have a domicile somewhere; and, in general, a domicile once established continues until superseded by a new domicile, and the old domicile is not lost until a new one is acquired. * * *
A person may have several residences or places of abode, but he can have only one domicile at a time. Domicile of choice is essentially a question of residence and intention  of factum and animus. It involves an exercise of volition. * * * And he may have his residence in one place, while his domicile is in another. * * * There are certain legal rights and privileges which pertain to `residence' rather than to `domicile'. One's `home' may be relinquished and abandoned, while one's `domicile', upon which may depend certain civil rights and duties, may in legal contemplation remain." (at pp. 215-216)
The evidence here is sufficient to establish that petitioner's domicile was in New Jersey; it does not establish that his residence or home from 1958 to the date of the accident was in this State. See cases previously cited and quoted and State v. Benny, 20 N.J. 238, 250-251 (1955). Under these circumstances there is no valid basis for this State to assume jurisdiction.
The judgment of dismissal in the Division of Workmen's Compensation is affirmed.