974 A.2d 433 (2009)
408 N.J. Super. 198
INTERNATIONAL SCHOOLS SERVICES, INC., Plaintiff-Appellant,
v.
NEW JERSEY DEPARTMENT OF LABOR AND WORKFORCE DEVELOPMENT, New Jersey Department of Banking and Insurance and New Jersey Compensation Rating and Inspection Bureau, Defendants-Respondents.
No. A-5722-07T3.
Superior Court of New Jersey, Appellate Division.
Submitted May 12, 2009.
Decided July 10, 2009.
*434 Crow & Associates, attorneys for appellant (Mark D. Schorr, on the brief).
Anne Milgram, Attorney General, attorney for respondents (Paul G. Witko, Deputy Attorney General, on the brief).
McElroy, Deutsch, Mulvaney & Carpenter, Morristown, attorneys for amicus curiae American Insurance Association and Property Casualty Insurers Association of America (Michael J. Marone, of counsel; Richard J. Williams, Jr. and Alissa Chang, on the brief).
Before Judges WEFING, PARKER and YANNOTTI.
The opinion of the court was delivered by
PARKER, J.A.D.
Plaintiff International Schools Services, Inc. (ISS) appeals from an order entered on June 20, 2008 declaring that plaintiff, a New Jersey employer, is required to provide workers' compensation insurance to its overseas employees pursuant to the New Jersey Workers' Compensation Act (the Act), N.J.S.A. 34:15-1 to -142.
The facts relevant to this appeal are as follows. ISS is a non-profit organization headquartered in Princeton. It employs 163 teachers in overseas schools under annual renewable contracts, which are often renewed for several years at a time. The overseas employees work entirely overseas and not in New Jersey.
In 2006, plaintiff's overseas employees were stationed in eight Asian countries and one South American country. Administrators in the foreign countries direct the overseas employees on a day-to-day basis. Of these employees, 108 were United States citizens, and 55 were foreign nationals. *435 None of the United States citizens are New Jersey residents.
Plaintiff's overseas employees do not come to plaintiff's New Jersey headquarters to sign their contracts; rather, they mail the signed contracts to the United States or to their posts overseas. Even if an overseas employee is hired at a job fair, none of those job fairs are held in New Jersey.
Plaintiff issues paychecks to its overseas employees from its New Jersey offices and pays payroll and unemployment taxes as well as temporary disability benefits for those who are United States citizens. Plaintiff retains the authority to hire, discharge, and determine the salary and benefits for its employees stationed abroad.
In its contracts with foreign schools, plaintiff agrees to maintain all insurance required by law, including workers' compensation insurance for its overseas employees. Plaintiff passes the costs of such insurance onto the schools it serves.
Prior to 2003, plaintiff was able to obtain foreign voluntary workers' compensation coverage for its overseas employees with "state of hire" and/or "country of hire" terms and conditions. In 2003, however, following a number of workers' compensation claims, plaintiff's insurer declined to provide voluntary coverage for employees working in certain countries. Plaintiff's other insurers indicated that they would only cover some overseas employees based on where they were employed. Plaintiff was unable to find an insurance carrier in the voluntary market that would provide workers' compensation insurance for all of its overseas employees.
Plaintiff initially contacted the New Jersey Compensation Rating and Inspection Bureau (CRIB) in August 2003 to obtain workers' compensation coverage for all of its overseas employees through the assigned market. CRIB assigned Continental Casualty Insurance Co. (CNA) to provide coverage, but CNA returned to plaintiff that portion of plaintiff's premium representing workers' compensation coverage for the overseas employees. CNA claimed that it was only responsible for covering risks associated with persons who worked in New Jersey.
In December 2003, plaintiff contacted CRIB again and asked for advice on whether it was bound to provide coverage to all employees. CRIB responded that the issue of whether a carrier is required to provide mandatory workers' compensation insurance for overseas employees should be decided by a court. CRIB also advised plaintiff that the insurance carrier would be responsible for legally compensable workers' compensation losses, regardless of whether it accepted or returned a portion of the premium.
Plaintiff then contacted the New Jersey Department of Banking and Insurance (DOBI) for assistance in obtaining coverage for its overseas employees. DOBI never responded to plaintiff's inquiry.
Plaintiff provides its overseas employees with voluntary compensation coverage as part of its long-term disability benefits. Such coverage is offset by any amounts payable to employees for whom mandatory workers' compensation insurance applies, and does not satisfy the insurance requirements of workers' compensation laws. If plaintiff's overseas employees are subject to the Act, they would be entitled to voluntary compensation benefits in excess of the amounts due under mandatory workers' compensation insurance.
Faced with uncertainty about its obligations under the Act, and a legal mandate to insure its employees, plaintiff filed a verified complaint in the Law Division seeking a declaratory judgment that its *436 overseas employees were not covered by the Act.[1] The American Insurance Association and the Property and Casualty Insurers Association (Associations) were granted leave to appear as amici curiae and noted that the standard New Jersey workers' compensation policy contains an exclusion for work locations outside of the United States.
Plaintiff moved for partial summary judgment and after argument on June 20, 2008, the trial court found that the Act requires that a "New Jersey Company" provide workers' compensation insurance for all of its employees, wherever they work. The court concluded that
[b]ased on the Workers' Compensation Act ... there should be coverage for a New Jersey company who is hiring and paying employees who work for it. Whether or not there is jurisdiction in any individual case is something that is going to be determined down the road and cannot be determined ahead of time by this [c]ourt.
Plaintiff appealed and argues that the trial court erred in finding that its overseas employees are covered by the New Jersey Workers' Compensation Act.
Plaintiff maintains that the trial court erred in failing to analyze the connection between plaintiff's overseas employees and New Jersey in accordance with the standards customarily utilized in such an inquiry. Plaintiff contends that the trial court should have employed the Larson Analysis articulated in Larson's Workers' Compensation Law, an authoritative treatise on workers' compensation, because New Jersey courts have adopted that analysis in determining whether the Act applies to a particular claim. Connolly v. Port Auth. of New York and New Jersey, 317 N.J.Super. 315, 319-20, 722 A.2d 110 (App.Div. 1998); Beeny v. Teleconsult, Inc., 160 N.J.Super. 22, 26-27, 388 A.2d 1269 (App. Div.1978); Wenzel v. Zantop Air Transport, Inc., 94 N.J.Super. 326, 333, 228 A.2d 104 (Cty.Ct.), aff'd o.b., 97 N.J.Super. 264, 235 A.2d 29 (App.Div.1967).
Under the Act, employers are required to provide for payment of obligations arising from workplace injuries through insurance coverage. N.J.S.A. 34:15-71 to -72. The Act broadly defines an "employee" as one who performs services for an employer for financial consideration. N.J.S.A. 34:15-36.
Plaintiff argues that if the trial court had followed Connolly and the Larson Analysis, it would have properly concluded that plaintiff's overseas employees have no meaningful contact with New Jersey and are not, therefore, covered under the Act. Defendants take no position on the issue.
To determine whether an employee has sufficient contacts with New Jersey to warrant application of the Act, a court must look to "the particular facts" of each case. Connolly, supra, 317 N.J.Super. at 318, 722 A.2d 110. If plaintiff's overseas employees have sufficient contacts with New Jersey, plaintiff has a legal obligation to maintain workers' compensation insurance for them.
The Larson Analysis sets forth six bases upon which New Jersey may apply its Workers' Compensation Act:

*437 (1) Place where the injury occurred; (2) Place of making the contract; (3) Place where the employment relation exists or is carried out; (4) Place where the industry is localized; (5) Place where the employee resides; or (6) Place whose statute the parties expressly adopted by contract.
When one of these falls within the local state, and some of or all of the others occur in another state, the question arises whether the local state can apply its statute without being accused of denying full faith and credit to the statute of the other. As matters now stand, it is clear that the state which was the locus of any one of the first three items contract, injury, or employmentand probably also of the next twoemployee residence and business localizationcan constitutionally apply its statute if it wants to.
[9 Larson's Workers' Compensation Law 142.01 at 142-2 (2000 rev. ed.).]
Although there are numerous cases citing the Larson Analysis to determine whether a particular claim is covered by the Act, our research has not disclosed a single reported decision addressing the applicability of the Act to an overseas worker. Connolly is the seminal New Jersey case applying the Larson factors to an extraterritorial injury.
In Connolly, the plaintiff was an employee of the Port Authority of New York and New Jersey (Port Authority), a bi-state agency. 317 N.J.Super. at 318, 722 A.2d 110. The plaintiff, a New York resident hired by the Port Authority at its New York office, alleged occupational hearing loss. Ibid. During his thirty-three years of employment with the Port Authority, the plaintiff had worked in New York for all but one day, when he was on the job in New Jersey. Ibid. The plaintiff suffered his on-the-job injury in New York. Ibid.
Reversing a compensation judge who held that New Jersey's compensation law could be applied because of the bi-state nature of the Authority, we held that the employee was not entitled to New Jersey workers' compensation benefits because his employment did not have sufficient contacts with New Jersey. Id. at 320, 722 A.2d 110. Specifically, we found no precedent for assertion of jurisdiction "where there are virtually no New Jersey employee/employer contacts, or any other New Jersey contacts incidental to the alleged injury or occupational loss or the employee himself." Ibid.
We noted in Connolly that the following factors traditionally trigger jurisdiction in the New Jersey compensation court: (1) the injury occurred in New Jersey, Boyle v. G. & K. Trucking Co., 37 N.J. 104, 108, 179 A.2d 514 (1962); (2) New Jersey is the place of the employment contract or hiring, Gotkin v. Weinberg, 2 N.J. 305, 307, 66 A.2d 438 (1949); Rivera v. Green Giant Co., 93 N.J.Super. 6, 11, 224 A.2d 505 (App.Div.1966), aff'd o.b., 50 N.J. 284, 234 A.2d 393 (1967); (3) the employee lives in New Jersey, Bunk v. Port Authority of New York and New Jersey, 144 N.J. 176, 180-81, 676 A.2d 118 (1996), and there were at least some employment contacts in New Jersey, Parks v. Johnson Motor Lines, 156 N.J.Super. 177, 180-81, 383 A.2d 734 (App.Div.1978); Beeny, supra, 160 N.J.Super. at 27-28, 388 A.2d 1269; and (4) "where there exists neither location of the injury, location of the employment contract or hiring, or residency of the employee in New Jersey, jurisdiction may still arise where the `composite employment incidents present a[n]... identification of the employment relationship with this State.'" Phillips v. Oneida Motor Freight, Inc., 163 N.J.Super. *438 297, 303, 394 A.2d 891 (App.Div.1978). The location of the employer, however, is never, by itself, sufficient to confer jurisdiction over out-of-state injuries. Connolly, supra, 317 N.J.Super. at 322, 722 A.2d 110.
In our review of the record, we find that the trial court did not consider the appropriate factors in making its determination as to whether plaintiff is required to provide coverage under the Act to its overseas employees. If the court had undertaken a Connolly/Larson Analysis, it could not have reached the conclusion it did.
Our problem in resolving the issue, however, arises from the limited record. For example, Desiree Bryant, plaintiff's Director of Human Services, certified that "ISS's overseas employees all sign contracts which I mail to them in the United States or in their current post[s] overseas. These employees do not come to ISS's Princeton, New Jersey, office to sign the contracts." Bryant does not state whether any of those contracts are mailed to employees at permanent residences in New Jersey.
Since the Connolly/Larson Analysis requires a case-by-case review of workers' claims, the record before us does not allow a generalization as to whether the Act applies to any of plaintiff's overseas employees. Mere permanent residence in New Jersey would not necessarily provide New Jersey Workers' Compensation for an overseas employee, but we are unable to determine from the record before us whether there may be any other contacts sufficient to warrant coverage under the New Jersey statute.
Accordingly, we reverse the order of June 20, 2008 and remand the matter for expansion of the record to clearly ascertain whether any of plaintiff's overseas employees may come within the Connolly/Larson Analysis. If plaintiff can demonstrate that none of its overseas employees have sufficient contacts with New Jersey to support a workers' compensation claim, plaintiff is not obligated to maintain such coverage. That determination must be made by the trial court after expansion of the record as indicated herein.
Reversed and remanded.
NOTES
[1] For the 2003-04 and 2004-05 school years, plaintiff collected monies from one of its foreign school clients before it learned it was unable to secure workers' compensation coverage for employees at that school. Plaintiff established and still maintains an escrow account containing these monies on behalf of the foreign school, pending resolution of these issues.