**EXHIBIT AIDS, INC.; American Mutual Insurance Company, Petitioners,**

**v.**

**Vernon L. KLINE, and Director, Office of Workers' Compensation Programs, United States Department of Labor, Respondents.**

No. 86–3133.

United States Court of Appeals, Fourth Circuit.

Argued March 4, 1987.

Decided June 8, 1987.

James G. Healy (Quinn, Scanlin & Maiberger, Rockville, Md., on brief), for petitioners.

George Edward Swegman (Ashcraft & Gerel, Washington, D.C., on brief), for respondents.

Before PHILLIPS and ERVIN, Circuit Judges, and RAMSEY, United States District Judge, for the District of Maryland, sitting by designation.

JAMES DICKSON PHILLIPS, Circuit Judge:

On March 2, 1981, Respondent Vernon L. Kline injured his back while unloading a carpet from a tractor-trailer. At the time of the accident, Kline was working as a warehouseman for Petitioner Exhibit Aids, Inc. Kline, a long-time Maryland resident, suffered his injury at Exhibit Aids' main warehouse in Beltsville, Maryland. Exhibit Aids hired Kline in Virginia, but Kline had worked out of the Beltsville facility for several years. Kline received his paychecks and his work directions from Beltsville. Kline performed most of his work at the Beltsville warehouse.

Rather than file his claim for workmen's compensation in Maryland, Kline filed in the District of Columbia under the Longshoremen's and Harbor Workers' Compensation Act (LHWCA), 33 U.S.C. § 901 et seq., as applied under the D.C. Workmen's Compensation Act, 36 D.C. Code § 501 et seq.[1] On May 23, 1983, an administrative law judge conducted a hearing on Kline's compensation claim against Exhibit Aids.

At the hearing, the parties stipulated to Kline's average weekly salary at the time of his injury and to his continuing total disability resulting from the accident. The parties also stipulated to the work-related nature of the accident, the employee-employer relationship between Kline and Exhibit Aids, and compliance with filing and notice requirements for the claim and its controversion. The sole issue before the ALJ, then, was whether the claim fell within the jurisdiction of the District of Columbia. The ALJ noted that Exhibit Aids conducted 40 to 50% of its business in the District, constructing displays for exhibits and shows, and that Kline worked in the District setting up displays for several days at a time approximately six times each year. The ALJ concluded, however, that these facts alone were insufficient to establish a "substantial connection" between the employee-employer relationship and the District. The ALJ concluded that the parties' obvious connection with Maryland and minimal contacts with the District made it "senseless to saddle District residents with the cost of worker's compensation benefits for an injury that occurred elsewhere."

When Kline appealed the ALJ's Order, the Benefits Review Board "reluctantly" reversed. While agreeing that "the contacts between claimant, employer and the District are not great" and opining that such slight contacts *should not* be adequate to create District jurisdiction, the Board felt constrained to find jurisdiction by a decision of the D.C. Circuit, *Director,*

1. Until 1980, the D.C.Code incorporated the LHWCA to provide a workmen's compensation program for the District. Former D.C.Code § 36–501 was replaced in 1980 by the District of Columbia Worker's Compensation Act of 1979, D.C.Code § 36–301 et seq.

On September 30, 1980, the Superior Court of the District of Columbia in an unpublished opinion held the new law null and void and the prior law was reinstated pending appeal. The District of Columbia Court of Appeals held that the District of Columbia had not, in fact, exceeded its legislative authority in *District of Columbia v. Greater Washington Central Labor Council,* 442 A.2d 110 (D.C.1982), and the current Act took effect on July 24, 1982. The current Act, promulgated under new home-rule powers for the District, restricts extraterritorial applications of the District's compensation scheme to reflect the view of the Council of the District of Columbia that former § 36–501, as interpreted and applied by the courts, "was unduly broad and generous" and placed the District "in a noncompetitive situation with Maryland and Virginia in keeping or attracting businesses." *Hughes v. District of Columbia Department of Employment Services,* 498 A.2d 567, 569–70 (D.C.1985). Former § 36–501 continues to apply to injuries like Kline's that were incurred prior to the effective date of the current Act. *See Brandt v. Stidham Tire Co.,* 785 F.2d 329 (D.C.Cir.1986); *Garrett v. Washington Air Compressor Co., Inc.,* 466 A.2d 462, 462 n. 1 (D.C. 1983).

*OWCP v. National Van Lines, Inc.,* 613 F.2d 972 (D.C.Cir.1979). The Board acquiesced in the perceived mandate of *National Van Lines* even though it recognized that Exhibit Aids would appeal the Board's adverse decision to the Fourth Circuit Court of Appeals and not to the authors of that decision.[2] Exhibit Aids has indeed appealed to this circuit, and we conclude the BRB erred in deciding that the ALJ was wrong on the jurisdictional question "as a matter of law."

■ Former D.C.Code § 36–501 provides in pertinent part:

> The provisions of [the Longshoremen's and Harbor Workers Compensation Act, 33 U.S.C. § 901 et seq.] ... shall apply in respect to the injury or death of an employee of an employer carrying on any employment in the District of Columbia, irrespective of the place where the injury or death occurs; except that in applying such provisions the term "employer" shall be held to mean every person carrying on any employment in the District of Columbia, and the term "employee" shall be held to mean every employee of any such person.

The potential extraterritorial reach of this provision is enormous; because § 36–501 applies in terms to any employer "carrying on *any employment* in the District of Columbia" and ignores the place of injury or death, a literal reading could result in application of the D.C. Act to every employee injury so long as the employer engages in intermittent business in the District. To narrow the jurisdictional reach of the provision, the courts have long applied a two-prong jurisdictional test. First, the court asks the question implicit in the provision itself: does the employer in fact carry on *any* business or employment in the Dis-

trict? If the answer to this first question is "yes," as it will be for many employers across the nation, the court then looks for a "substantial connection" between the employee-employer relationship and the District.

This second limiting principle derives from *Cardillo v. Liberty Mutual Insurance Co.,* 330 U.S. 469, 67 S.Ct. 801, 91 L.Ed. 1028 (1947). In that case, the Supreme Court considered the compensation claim of an employee who worked principally outside the District and who was injured at a Virginia work site. The Supreme Court concluded that the worker's claim, despite his place of work at the time of injury, fell under the "broad sweep of the statutory language." 330 U.S. at 474, 67 S.Ct. at 805. The Court went on to explain the rationale for such extraterritorial applications of the statute:

> A prime purpose of the Act is to provide residents of the District of Columbia with a practical and expeditious remedy for their industrial accidents and to place on District of Columbia employers a limited and determinate liability. The District is relatively quite small in area; many employers carrying on business in the District assign some employees to do work outside the geographical boundaries, especially in nearby Virginia and Maryland areas. When such employees reside in the District and are injured while performing those outside assignments, they come within the intent and design of the statute to the same extent as those whose work and injuries occur solely within the District.

Reemphasizing the importance of the *District's* interest in some extraterritorial applications of its workmen's compensation scheme, the Court continued:

> [under former § 36–501] 'occur' within the territorial jurisdiction of the United States Court of Appeals for the District of Columbia Circuit." *National Van Lines,* 613 F.2d at 978–79 n. 20. This circuit has adopted the more obvious reading of § 921(c), recognizing our jurisdiction over claims arising under former § 36–501 whenever the injury occurs within this circuit. *Haughton Elevator Co. v. Lewis,* 572 F.2d 447, 448 n. * (4th Cir.1978).

2. 33 U.S.C. § 921(c) of the LHWCA provides in part:
> Any person adversely affected or aggrieved by a final order of the [Benefits Review] Board may obtain a review of that order in the United States court of appeals *for the circuit in which the injury occurred....*

The D.C. Circuit has held that since former § 36–501 incorporates this provision for the benefit of the District, "for purposes of appellate jurisdiction, [all] injuries giving rise to claims

In other words, the District's legitimate interest in providing adequate workmen's compensation measures for its residents does not turn on the fortuitous circumstance of the place of their work or injury. Nor does it vary with the amount or percentage of work performed within the District. Rather it depends upon some *substantial connection between the District and the particular employee-employer relationship*, a connection which is present in this case.... And so applied, the statute fully satisfies any constitutional questions of due process or full faith and credit.

330 U.S. at 476, 67 S.Ct. at 806 (emphasis added) (citations omitted).

*Cardillo* did not profess to offer any single litmus test for assertions of jurisdiction under § 36–501. The Court's conclusion, however, that connections between that particular employee-employer relationship and the District were "substantial" explicitly rested on several undisputed facts. First, the employee was a resident of the District who was hired in the District and commuted daily to his employer's Virginia construction project. Second, the employer had its place of business in the District, did business in the District, paid its workers and issued its work orders from the District, and remained free to transfer the claimant back to a District assignment.

■ The Court expressly refused to decide whether the language of the provision "covers employees who are more remotely related to the District," 330 U.S. at 475–76, 67 S.Ct. at 805. This appeal, however, obviously involves a fundamentally different sort of "connection." Kline resided in Maryland, was hired in Virginia, and was not subject to transfer to the District. Exhibit Aids did not have a place of business in the District, and consequently did not pay its workers or issue work orders from there. The only arguable connection between this employee-employer relationship and the District is that Exhibit Aids carries on some 40 or 50% of its business in the District and that Kline intermittently entered the District on such business.

As the Supreme Court noted in *Cardillo*, the purpose of the "substantial connection" test is to measure the District's legitimate interest in protecting its residents and placing on its employers a "limited and determinate liability." Since this compensation claim implicates neither of those interests, we agree with the ALJ that it would be "senseless" to recognize District jurisdiction over this work-related accident in Maryland. The facts of this appeal, considered in light of the logic and underlying policies revealed in *Cardillo*, do not implicate any legitimate interests of the District in applying its workmen's compensation laws to this claim.[3] The decision of the ALJ was not wrong as a matter of law and the decision of the Benefits Review Board is reversed.

REVERSED.

---

**3.** We need not decide whether the result might be different if this appeal were taken to the D.C. Circuit. The "substantial connection" test is designed to measure the "quality" of contact with the District and so does not ask whether any given factor or combination of factors enumerated in *Cardillo* is or is not present. *Pettus v. American Airlines, Inc.*, 3 Ben.Rev.Bd.Serv. (MB) 315 (1976), *rev'd on other grounds*, 587 F.2d 627 (4th Cir.1978). For that reason, each inquiry into jurisdiction is likely to turn on a different weighing of the competing factors by the factfinder. *National Van Lines*, in which the D.C. Circuit found jurisdiction to exist, while concededly close to the facts of this case if only because that employee-employer relationship also had few contacts with the District, can be distinguished in a number of ways. For example, that claimant made more frequent work-related trips into the District. To the extent, however, that *National Van Lines* stands for the proposition proposed by Kline, that the D.C. compensation scheme applies to every Virginia and Maryland employer in the "Washington, D.C. metropolitan area," we reject that holding as inconsistent with the basic rationale of *Cardillo*.