832 F.2d 637
 266 U.S.App.D.C. 25
 Catherine GUSTAFSON (Widow of William Gustafson), Petitioner,
v.
INTERNATIONAL PROGRESS ENTERPRISES, et al., Director, Office
of Workers' Compensation Programs, U.S. Department
of Labor, Respondents.
 No. 86-1335.
 United States Court of Appeals,
District of Columbia Circuit.
 Argued Oct. 13, 1987.
Decided Nov. 10, 1987.
 
 Carolyn McKenney, with whom Joseph H. Koonz, Jr. and Roger C. Johnson, Washington, D.C., were on brief, for petitioner.
 Samuel J. Oshinsky, Atty., Dept. of Labor, with whom Donald S. Shire, Associate Sol., Dept. of Labor was on brief, for respondents, Office of Workers' Compensation Programs, U.S. Dept. Washington, D.C. of Labor.
 Before ROBINSON, RUTH B. GINSBURG and STARR, Circuit Judges.
 Opinion for the Court filed by Circuit Judge RUTH B. GINSBURG.
 RUTH Bader GINSBURG, Circuit Judge:
 
 
 1
 This case concerns the 1978 death of a United States worker in Saudi Arabia and his widow's claim for survivor's benefits under the District of Columbia's then-effective workers' compensation regime.[1] The decedent was employed by a Saudi Arabian enterprise that maintained its sole United States office in the District of Columbia. The administrative law judge (ALJ) held the employment not covered by the District's law[2] and the Benefits Review Board (BRB) affirmed the ALJ's decision denying the compensation claim.[3]
 
 
 2
 We reverse. The ALJ acknowledged that the definition section of the District's law, 36 D.C. Code Sec. 501, if "read literally[,] would clearly apply to the instant situation."[4] She rejected a literal reading, however, at least in part because she feared transgressing constitutional "full faith and credit" and due process limitations.[5] But there is in this case no question of the "full faith and credit" owed to the statute or award of some other jurisdiction within the United States, or of a due process constraint designed to prevent states from encroaching upon each other's sovereignty. Cf. Cardillo v. Liberty Mut. Ins. Co., 330 U.S. 469, 476, 67 S.Ct. 801, 806, 91 L.Ed. 1028 (1947) (application of District's law "depends upon some substantial connection between the District and the particular employee-employer relationship"); Director, OWCP v. National Van Lines, 613 F.2d 972, 981-82 & nn. 29-31 (D.C.Cir.1979) ("So long as a set-off of previous awards in other jurisdictions is made, thereby avoiding duplicative recovery, a state or district with substantial contacts to an employment relation may apply its compensation laws without regard to whether another jurisdiction has or could have asserted jurisdiction." (footnote omitted)). The employment relationship at issue had significant ties to the United States and, on the facts presented, no legal regime in this country appears more suitable to govern the employer's compensation obligations to his United States workers than the law in force in the District of Columbia.
 
 I.
 
 3
 Borrowing from the BRB's and ALJ's concise recitations, we set out the salient facts. International Progress Enterprises (IPE), an employer in the construction business in Saudi Arabia, opened a Washington, D.C. office in mid-December 1977. On December 31, 1977, after responding to IPE's ads in D.C. newspapers, claimant's husband, William Gustafson, entered into an employment contract with IPE. Gustafson and his family then lived in Alexandria, Virginia; the employment contract was in fact signed at the condominium of IPE's owner (A.M. Kofide)[6] in Arlington, Virginia. Gustafson's contract provided that he would work as a general foreman and superintendent for IPE "in Saudi Arabia and such other places as the employer may direct."[7]
 
 
 4
 For several weeks prior to his departure for Saudi Arabia, Gustafson worked for IPE at the Washington office. From February 28, 1978 until his death in an automobile accident on December 9, 1978, Gustafson worked on IPE construction endeavors in Saudi Arabia. In the course of his superintendence of construction in Saudi Arabia, Gustafson and his immediate superior, Dominic Rufrano, maintained telex and telephone contact with IPE's Washington office, which served as a supplies and equipment procurement liaison, shipping expediter, personnel recruitment facility, and information gathering organization.
 
 
 5
 Catherine Gustafson, widow of William Gustafson, filed for survivor's benefits under the District of Columbia compensation law; adjudicative hearings were held in October and November of 1980; the ALJ denied the claim in January 1982; and the BRB affirmed the denial in April 1986.[8]II.
 
 
 6
 The ALJ's discussion split the IPE-Gustafson employment relationship into two distinct phases and, in that frame of reference, enumerated points of contact with potentially concerned jurisdictions. At the start of the relationship, the ALJ reasoned, there was a "recruitment phase" in which Gustafson's work centered around the Washington, D.C. office; thereafter, there was "the Saudi Arabia phase," i.e., the performance phase.[9] Had the death occurred during the recruitment phase, the ALJ said, the District of Columbia law, "in all likelihood," would have applied.[10] Gustafson's move to Saudi Arabia, in the ALJ's view, broke or very substantially weakened the link between his IPE employment and the District of Columbia. The ALJ additionally noted that the contract could not count as one executed in the District, for it had been signed in Arlington, Virginia.[11] She also observed that both before and after the ill-fated sojourn in Saudi Arabia, the Gustafson family resided in Virginia. (The Gustafsons' residence in Alexandria, prior to and after the family's stay in Saudi Arabia, has been conceded throughout this litigation.) Had the family resided in D.C. proper, the ALJ indicated, the District's law might have covered the case.[12] The BRB essentially agreed with the ALJ reasoning.
 
 
 7
 We find the ALJ and BRB decisions unduly constricted. First, the District of Columbia law in question has a built-in "presumption of jurisdiction";[13] as this circuit's precedent elaborates, "[t]he District of Columbia Workmen's Compensation Act ... is of widest permissible extraterritorial application." National Van Lines, 613 F.2d at 979, 980. Second, the bifurcated--recruitment phase/performance phase--approach to Gustafson's employment indicates a rigidity long rejected in this field of law, particularly where, as in cases like the present one, the approach would often leave the injured employee or his bereaved family remediless. See Alaska Packers Ass'n v. Industrial Accident Comm'n, 294 U.S. 532, 542, 55 S.Ct. 518, 521, 79 L.Ed. 1044 (1935) (upholding California compensation award to a nonresident alien employed in California for seasonal work in Alaska, where injury occurred).[14]
 
 
 8
 Examining the IPE-Gustafson employment relationship in its entirety, we find ample affiliations with the District of Columbia justifying application of its law. Moreover, there is here no clash with the law of a sister state. While the law of Virginia does not provide for this case,[15] it can hardly be maintained that Virginia would deem Catherine Gustafson's recovery under District of Columbia law offensive to Virginia's sovereignty, public policy, or state interest.
 
 
 9
 Finally, we address the constitutional doubt that the ALJ harbored. She observed that "[w]orkers from all over the nation are recruited and trained in the District of Columbia for permanent duty stations elsewhere."[16] Extending the protection of the District's law to such employees, she said, would raise serious constitutional questions. There was no occasion, in addressing Catherine Gustafson's claim, to opine on "such employees" at large. It suffices to focus on a foreign enterprise deliberately setting up shop here, to recruit metropolitan Washington area workers, and continuously develop U.S. supply sources for projects abroad. No overextension of District of Columbia law into domains exclusively reserved to other states or nations is involved in holding such an enterprise within the scope of D.C. compensation law. See 4 A. LARSON, WORKMEN'S COMPENSATION LAW Sec. 86.35 (1987). IPE solicited William Gustafson's services through District of Columbia facilities and used those facilities to obtain personnel and material essential to its business.[17] We hold that the employment relationship IPE formed with William Gustafson is legitimately and substantially tied to this nation and District. Nothing in the Constitution commands that Catherine Gustafson must be remitted to whatever remedy she may be afforded in the tribunals and under the law of Saudi Arabia.
 
 CONCLUSION
 
 10
 For the reasons stated, the BRB's decision affirming the decision of the ALJ is reversed, and this case is remanded to the ALJ for consideration of the remaining issues presented: whether Gustafson was killed in the course of his employment; and the amount of Gustafson's average weekly wage. We note that nearly nine years have elapsed since William Gustafson's death, and we anticipate, in view of that considerable time lapse, that all persons concerned will cooperate to expedite a final disposition of Catherine Gustafson's claim.
 
 
 11
 It is so ordered.
 
 
 
 [1]
 Under the District of Columbia's Workmen's Compensation Act of May 17, 1928, 36 D.C. Code Secs. 501, 502, the governing regime was the Longshore and Harbor Workers' Compensation Act, 33 U.S.C. Secs. 901-950 (1982). The 1928 D.C. Act was replaced by the District of Columbia Workers' Compensation Act of 1979, 36 D.C.Code Ann. Secs. 36-301 to -345 (1981 & Supp.1987), which became effective in July 1982. Injuries incurred prior to the effective date of the 1979 Act--the death in this case falls in that category--continue to be governed by the prior law. See, e.g., Crum v. General Adjustment Bureau, 738 F.2d 474, 475 n. 2 (D.C.Cir.1984); see also Keener v. WMATA, 800 F.2d 1173 (D.C.Cir.1986) (1984 amendments to the Longshore Act do not apply to residual claims under the 1928 D.C. Act)
 
 
 [2]
 Decision and Order of January 12, 1982 (ALJ Decision), reprinted in Appendix (A.) at 8-19
 
 
 [3]
 Decision and Order of April 15, 1986 (BRB Decision), reprinted in A. at 3-7
 
 
 [4]
 ALJ Decision, A. at 14. Under 36 D.C. Code Sec. 501, the place of injury or death is not controlling; "employer" is defined as "every person carrying on any employment in the District of Columbia"; "employee" is defined as "every employee of any such person."
 
 
 [5]
 ALJ Decision, A. at 14, 19
 
 
 [6]
 Kofide was a national of Saudi Arabia and a former official at his nation's embassy in Washington, D.C. ALJ Decision, A. at 10
 
 
 [7]
 Id., A. at 11
 
 
 [8]
 The employer, IPE, and its carrier appeared, and were separately represented by counsel, before the ALJ and the BRB. On consent of the claimant, however, the carrier has been dismissed as a party to this case. D.C. Cir. Order filed Sept. 11, 1987 (No. 86-1335). The dismissal stemmed from an adjudication between the employer and carrier in the District of Columbia courts which terminated in a decision that the employer's policy did not cover Gustafson's death. A.M. Kofide d/b/a International Progress Enter. v. Kemper Ins. Co., No. 82-848 (D.C.C.A. Feb. 17, 1983)
 Counsel who appeared for IPE before the ALJ and the BRB has informed the court, moreover, of his multiple and diligent, albeit unsuccessful, efforts to notify IPE's principal, Kofide, of the favorable BRB decision and the likelihood of an appeal. Unable to locate and communicate with his client, counsel notified the court that he has no authorization to continue representing IPE in this matter. Letter from Jack Pearce to Clerk of the United States Court of Appeals for the District of Columbia Circuit (Aug. 28, 1986).
 It therefore appears that any award ultimately determined in this case could be recovered only from the special fund for which provision is made in 33 U.S.C. Secs. 944, 918(b). That fund is administered by the Office of Workers' Compensation Programs, United States Department of Labor (OWCP); as statutory respondent in this case, OWCP has filed a brief in support of claimant's position that William Gustafson's employment with IPE did involve sufficient contacts with the District of Columbia to confer jurisdiction under the (former) D.C. compensation law.
 
 
 [9]
 ALJ Decision, A. at 15-19
 
 
 [10]
 Id., A. at 15
 
 
 [11]
 Id., A. at 10, 17
 
 
 [12]
 Id., A. at 17 (Had family been District residents, D.C. "would have had considerable interest in protecting Claimant and her minor children from the loss of income caused by a work related accident of the breadwinner while in the employ of an employer who engaged in business in the District.")
 
 
 [13]
 The "presumption of jurisdiction" provision, 33 U.S.C. Sec. 920(a), is contained in the Longshore Act, see supra note 1; it reads:
 In any proceeding for the enforcement of a claim for compensation under this chapter it shall be presumed, in the absence of substantial evidence to the contrary--
 (a) That the claim comes within the provisions of this chapter.
 
 
 [14]
 Alaska Packers, which concluded that it was immaterial that the employee was not a California resident and that his work was all done in Alaska, rested upon an unconstricted reading of due process and full faith and credit prescriptions, an approach heavily relied upon and further elaborated in Pacific Employers Ins. Co. v. Industrial Accident Comm'n, 306 U.S. 493, 59 S.Ct. 629, 83 L.Ed. 940 (1939). See generally 4 A. LARSON, WORKMEN'S COMPENSATION LAW Secs. 86.00-.35 (1987) ("Any state having a more-than-casual interest in a compensable injury may apply its compensation act to that injury without violating its constitutional duty....")
 
 
 [15]
 The Virginia statute provides that for injuries occurring outside Virginia, compensation is payable only if: "(1) The contract of employment was made in this Commonwealth; and (2) the employer's place of business is in this Commonwealth...." Va.Code Ann. Sec. 65.1-61 (1987). Because IPE had no place of business in Virginia, Gustafson's widow could not obtain recovery under Virginia law
 
 
 [16]
 ALJ Decision, A. at 19
 
 
 [17]
 The BRB misread our decision in Butler v. Continental Western Lines, 668 F.2d 1374 (D.C.Cir.1981). See BRB Decision, A. at 6. There, we held that a worker who at all relevant times resided in California, and was employed by a division of Trailways, Inc., a Texas corporation, to work as a bus driver in western states, was not covered by the District of Columbia compensation law with regard to an accident that caused his death in Colorado. The sole ties to the District in Butler were the operation of separate corporate subsidiaries of Trailways in the District and the D.C. residence of the compensation claimants, Butler's children
 We emphasized that Butler had an entirely "west coast employment situation," 668 F.2d at 1375, and saw no basis for treating corporate subsidiaries operating in D.C. as though they were one and the same as a west coast operating division of the Texas corporate parent. Here, in marked contrast, the worker was recruited through District of Columbia facilities, commenced work at the employer's D.C. office, and maintained contact with that office during his work on projects in Saudi Arabia.
 We noted, tellingly, in Butler, that "petitioners have filed a timely claim for workers' compensation benefits in California." Id. at 1376 n. 1. Here, as already observed, Gustafson's widow has no alternative, obviously proper, place in which to bring her compensation claim. See supra p. 640.
 The central point we endeavored to make in Butler was that--standing alone--"the residence of the claimants, when it differ[s] from the residence of the deceased employee, [is not a factor substantial enough] to invoke application of a workers' compensation statute." Id. at 1376. That point, it is evident, has nothing to do with this case.