Mark G. GREENFIELD, Petitioner,

v.

VOLPE CONSTRUCTION COMPANY, INC., Lumbermen's Mutual Casualty Co. and Dir., OWCP, U.S. Dept. of Labor, Respondents.

No. 87–1572.

United States Court of Appeals, District of Columbia Circuit.

Argued May 10, 1988.

Decided June 10, 1988.

James A. Mannino, with whom William F. Mulroney, Washington, D.C., was on the brief, for petitioner.

Joshua T. Gillelan, II, Atty., Dept. of Labor, with whom Donald S. Shire, Associate Sol., Dept. of Labor, Washington, D.C., was on the brief, for respondent, Director, Office of Workers' Compensation Programs, in support of petitioner.

D. Stephenson Schwinn, Washington, D.C., for respondents, Volpe Const. Co. and Lumbermen's Mut. Cas. Co.

Before WALD, Chief Judge, and EDWARDS and SILBERMAN, Circuit Judges.

Opinion PER CURIAM.

PER CURIAM:

Mark G. Greenfield petitions this court for review of denial by the Benefits Review Board of his claim for disability benefits under the District of Columbia Workmen's Compensation Act. 36 D.C.Code §§ 501–502. We grant the petition for review and remand for entry of an appropriate award.

## I.

Mark Greenfield was, at all times relevant to this dispute, a resident of Hyattsville, Maryland. In 1975, Greenfield, a member of a Washington, D.C. based local union, was hired out of the union hall in the District by Volpe Construction Company as a laborer on a Metro construction site in D.C. For the next three years, Greenfield worked exclusively on Metro sites in the District and served as a shop steward. In 1978, he transferred to Volpe's Blue Plains sewage treatment plant job site in southwest D.C., where he worked until late 1980. At that time, he moved to Volpe's construction site for the East Falls Church Metro Station in Arlington, Virginia. He received no special reimbursement for travel to Arlington. In his capacity there as shop steward for laborers, Greenfield was on site virtually continually during working hours. He did, however, make periodic trips to pick up tools or equipment from job sites in the District for use at Arlington, or to pick up paychecks at Volpe's Suitland, Maryland office for distribution at the Arlington site, passing through D.C. in transit.

In October of 1981, Greenfield injured his knee while on the job at the Arlington site. He continued to work until his resignation in November of 1982, after which he underwent arthroscopic surgery. Greenfield thereafter received benefits as a result of a claim he filed under the Virginia Workmen's Compensation Act.

Volpe Construction Company is a Massachusetts corporation with headquarters in that state. Its Suitland, Maryland office performs planning and accounting for jobs in the Washington area. The daily operations of the Arlington, Virginia job site were, however, overseen from an office in Arlington. Volpe issued Greenfield's paychecks from Massachusetts and forwarded them to Suitland for delivery to Arlington.

The Administrative Law Judge ruled that Greenfield's claim for supplemental benefits did not come within the coverage of the District of Columbia Workmen's Compensation Act (as it existed at the time of

injury [1]), which provides:

> The provisions of chapter 18 of title 33, U.S.Code, including all amendments that may hereafter be made thereto, shall apply in respect to the injury or death of an employee of an employer carrying on any employment in the District of Columbia, irrespective of the place where the injury or death occurs; except that in applying such provisions the term "employer" shall be held to mean every person carrying on any employment in the District of Columbia, and the term "employee" shall be held to mean every employee of any such person.

36 D.C.Code § 501 (1973).

The ALJ concluded there was "no question" that Volpe was "carrying on ... employment in the District of Columbia" for purposes of section 501, but ruled there was not a "substantial connection between the District and the particular employee-employer relationship" as required by *Cardillo v. Liberty Mutual Insurance Co.*, 330 U.S. 469, 476, 67 S.Ct. 801, 806, 91 L.Ed. 1028 (1947). *Greenfield v. Volpe*, No. 84–DCW–91 (Labor ALJ Sept. 4, 1984). After detailing the links between Greenfield's employment and the District— Greenfield was hired by Volpe there and worked there until 1980; he was shop steward for the D.C. local of his union; he made a number of trips to or through the District during his employment in Virginia; and the Metro system on which he worked was a matter of public concern in the District— the ALJ determined those links did not constitute a substantial connection to the District. Specifically, the ALJ distinguished *Director, OWCP v. National Van Lines*, 613 F.2d 972 (D.C.Cir.1979), *cert. denied*, 448 U.S. 907, 100 S.Ct. 3049, 65 L.Ed.2d 1136 (1980). In that case, we upheld coverage under the D.C. Act for injuries to a moving and storage company driver despite the absence of typical indicia of substantial contacts with the jurisdiction, such as residence of the employee or headquarters of the employer. The ALJ here,

however, understood *National Van Lines* to turn on the difficulty of fixing a precise location for the employment of a moving van driver, so that the employer's location in Fairfax, Virginia and service of the entire D.C. metropolitan area meant that the employment relationship was effectively centered *throughout* that area. Here, in contrast, the ALJ found that the Arlington Metro site provided a precise locus for employment, and therefore ruled there was no substantial connection to the District of Columbia. The Benefits Review Board affirmed the ALJ's decision, for the reasons given by the ALJ, 20 Ben.Rev.Bd.Serv. (MB) 46 (1987), and Greenfield petitioned this court for review.

**II.**

We confront first a challenge to our jurisdiction to hear this case. The Benefits Review Board suggested in its opinion, *id.* at 48 n. 2, and Volpe argued in its brief, that this case should be reviewed in the Fourth Circuit, where the injury occurred. It is the longstanding law of this Circuit that "for purposes of appellate jurisdiction, injuries giving rise to claims under 36 D.C. Code § 501 'occur' within the territorial jurisdiction of the United States Court of Appeals of the District of Columbia Circuit" and are therefore reviewable here. *National Van Lines*, 613 F.2d at 978 n. 20. To be sure, the Fourth Circuit has questioned the exclusivity of our review, holding that review of cases under the D.C. Act should be had in the circuit where the injury occurred, *see, e.g., Exhibit Aids, Inc. v. Kline*, 820 F.2d 650, 652 n. 2 (4th Cir. 1987), but we are bound by our precedent and, particularly in light of the disappearance of the statutory regime to which the *National Van Lines* holding applies, see no reason for our court to reconsider the matter en banc.

On its merits, this case is complicated by the intervention of the Office of Workers' Compensation Programs

1. Injuries occurring after July of 1982 are covered, not by this regime, but by the District of Columbia Workers' Compensation Act of 1979, 36 D.C.Code §§ 301–345. *See Gustafson v. International Progress Enters.*, 832 F.2d 637, 638 n. 1 (D.C.Cir.1987). This Circuit's role in reviewing administration of the new statute will be greatly reduced.

("OWCP") of the Department of Labor, the policymaking agency in the area of workers' compensation, urging that the Benefits Review Board decision be overturned. We consequently face disagreement over what deference, if any, is due the Board's view. Although we have indicated that we will not, in normal circumstances, lightly upset the jurisdictional determinations of the Benefits Review Board, *see National Van Lines*, 613 F.2d at 980 & n. 22; *see also Stevenson v. Linens of the Week*, 688 F.2d 93, 98 n. 6 (D.C.Cir.1982), we have also noted that this deference falls away when the Board's view is contradicted by the OWCP. *See National Van Lines*, 613 F.2d at 985–86 (where Board's decision involves a policy judgment and is opposed by OWCP, court is freer to examine the matter independently); *see also Potomac Elec. Power Co. v. Director, OWCP*, 449 U.S. 268, 278 n. 18, 101 S.Ct. 509, 514, 66 L.Ed.2d 446 (1980) ("[T]he Benefits Review Board is not a policymaking agency; its interpretation of the LHWCA thus is not entitled to any special deference from the courts.") We therefore look to the Board's decision only for its persuasive force.[2]

■ The District of Columbia Workmen's Compensation Act incorporates the "presumption of jurisdiction" of the Longshore and Harbor Workers' Compensation Act, 33 U.S.C. § 920(a) (1982); *see Gustafson*, 832 F.2d at 640 & n. 13, and we have said the Act is to be afforded the "widest permissible extraterritorial application," *National Van Lines*, 613 F.2d at 979. The primary limits on its reach, then, are the due process and full faith and credit requirements of the Constitution. The latter is not argued to be implicated here, and we have previously held the former to be satisfied in a case in which the connection between the employment relationship and the District was, if anything, more attenuated than the one involved here.

In *Gustafson v. International Progress Enterprises*, 832 F.2d 637, a widow sought survivor's benefits under the D.C. Act for the death of her husband, a worker in Saudi Arabia. William Gustafson, a resident of Alexandria, Virginia, was hired by the Washington office of a Saudi Arabian construction company (although the employment contract was signed in Arlington, Virginia). Gustafson worked for several weeks in the Washington office before transferring to Saudi Arabia for the nine months preceding his death. During the time in Saudi Arabia, Gustafson and his superior maintained telephone and telex contact with the Washington office, which performed procurement and hiring functions. 832 F.2d at 639. We held the D.C. Act covered Gustafson's death.

In all respects but two, Greenfield's employment is plainly more closely tied to the District than Gustafson's. In addition to being hired there, Greenfield worked in the District for a longer period than did Gustafson and physically returned there on work-related tasks even after his transfer. On the other hand, Volpe did not, as did the employer in *Gustafson*, maintain an office in the District. Since Volpe did carry on employment in the District, as required by the Act, and the continuing links of Greenfield's work to the District seem at least as strong as Gustafson's, who never returned to the District on business and whose work apparently bore *no* relation to the District, the presence or absence of a physical office in the city seems to us insignificant in this case.

The instant case is also arguably distinguishable from *Gustafson* because *Gustafson* involved an overseas, not interstate, employment relationship. Our opinion there might be understood to suggest that its reasoning extended only to foreign enterprises. *See* 832 F.2d at 641. Our proper inquiry, though, is whether there is a "substantial connection" between the District and the employment relationship, not whether the District's interests are in some way superior to those of other jurisdictions. *See National Van Lines*, 613 F.2d at 981.

---

**2.** It would be particularly anomalous to defer to the Board's determination of coverage of the statute (jurisdictional facts) as against the Secretary's opposing view since the Secretary has unrestricted power to remove the Board members. *See* 20 C.F.R. § 801.201(d) (1987).

The extraterritorial aspects of the employment relationship are irrelevant to the "substantial connection" inquiry, and *Gustafson* is indistinguishable on this point. We therefore grant the petition for review and remand for entry of an appropriate award.

*It is so Ordered.*