Clarence EDGERTON, Petitioner,

v.

**WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY and Director, Office of Worker's Compensation Programs, Respondents.**

No. 90–1093.

United States Court of Appeals, District of Columbia Circuit.

Argued Dec. 10, 1990.

Decided Jan. 29, 1991.

As Amended Jan. 29 and March 5, 1991.

William H. Stapleton, Jr., for petitioner. Mark J. Brice and Kimberly L. Moore, Washington, D.C., were on the brief for petitioner.

E. Joseph Fitzpatrick, Jr., for respondent Washington Metropolitan Area Transit Authority. Margaret L. Taylor, Gaithersburg, Md., was on the brief for respondent, Washington Metropolitan Area Transit Authority.

Before WALD, EDWARDS and D.H. GINSBURG, Circuit Judges.

Opinion for the Court filed PER CURIAM.

PER CURIAM:

This case involves a petition for review of an order of the United States Department of Labor Benefits Review Board ("Board"). Petitioner, Clarence Edgerton, an employee of the Washington Metropolitan Area Transit Authority ("WMATA"), brought a claim under the workers' compensation regime of the District of Colum-

bia ("District"), seeking disability benefits for an alleged work-related injury that he suffered in 1980. Finding that Edgerton's employment did not fall within the territorial jurisdiction of the District's workers' compensation statute, the administrative law judge ("ALJ") denied the claim, and the Board affirmed the ALJ's decision on appeal.

In reaching his judgment on petitioner's claim, the ALJ erroneously assumed that Edgerton carried the burden of establishing District jurisdiction. Under the applicable statute, there is a presumption of jurisdiction and the burden of disproving jurisdiction falls upon the party opposing the compensation claim.[1] The Board, in an attempt to rehabilitate the ALJ's decision, stated that the ALJ had "rationally determined that claimant had no contacts with the District." But the Board's decision cannot stand because the ALJ made no such determination—rather, the ALJ merely assumed the answer to the question regarding jurisdiction, without ever considering whether the employer had carried its burden of rebuttal. Thus, we are constrained to reverse and remand this case to the Board for further proceedings.

## I.

On November 26, 1980, Edgerton injured his neck and shoulder while performing his duties as a bus driver for WMATA. He returned to work in late January 1981, but during the next five years was required to take frequent absences in order to undergo treatment and physical therapy. WMATA voluntarily paid Edgerton temporary total disability benefits during these absences. Edgerton eventually filed a workers' compensation claim under the District of Columbia Workmen's Compensation Act of May 17, 1928, Pub.L. No. 70–419, 45 Stat. 600 (1928) (formerly codified at D.C.Code Ann. §§ 36–501 et seq. (1973)) (repealed 1980) ("1928 D.C. Act" or "Act"), seeking permanent partial disability benefits from WMATA for the loss of wage-earning potential attributable to his injury.[2]

After a hearing, the ALJ rejected Edgerton's claim, finding that the evidence failed to demonstrate that Edgerton had any employment contacts with the District, and that as a result no showing had been made that the claim came within the territorial jurisdiction of the 1928 D.C. Act.[3] As the ALJ made clear in a subsequent order denying Edgerton's request for reconsideration, he viewed Edgerton as bearing the full burden of proving that his employment contacts with the District were sufficient to warrant jurisdiction under the Act.[4]

Edgerton appealed this decision to the Board, noting that, contrary to the ALJ's view, the 1928 D.C. Act contains a presumption of jurisdiction that can be rebutted only by substantial countervailing evidence. The Board conceded that the ALJ "erroneously failed to apply the Section 20(a) presumption in determining whether [Edgerton] ... had established 'substantial' contacts with the District."[5] The Board held this error to be "harmless," however, finding that the ALJ had "rationally determined that claimant had no contacts with

---

**1.** Section 20 of the applicable Longshore and Harbor Workers' Compensation Act, as amended, 33 U.S.C. §§ 901–950 (1988), reads in relevant part:

In any proceeding for the enforcement of a claim for compensation under this chapter it shall be presumed, in the absence of substantial evidence to the contrary—

    (a) That the claim comes within the provisions of this chapter.

33 U.S.C. § 920(a) (1988) (hereinafter "Section 20(a)").

**2.** Injuries, such as Edgerton's, incurred prior to mid–1982 are governed by the 1928 D.C. Act. See Gustafson v. International Progress Enters., 832 F.2d 637, 638 n. 1 (D.C.Cir.1987). Injuries incurred after that time are covered by the District of Columbia Workers' Compensation Act of 1979, D.C.Code Ann. §§ 36–301 to –345 (1988), the successor statute to the 1928 Act.

**3.** Decision and Order—Rejection of Claim (June 2, 1986) ("ALJ Decision"), reprinted in Appendix of Respondent, Washington Metrop[o]litan Area Transit Authority ("R.A.") 1, 2–4.

**4.** Denial of Reconsideration (July 17, 1986) ("ALJ Reconsideration Decision"), reprinted in R.A. 5, 7.

**5.** Decision and Order (Jan. 31, 1990) ("Board Decision"), reprinted in R.A. 9, 11.

the District."[6]  The Board rejected Edgerton's subsequent request for reconsideration,[7] and this petition for review ensued.

## II.

The 1928 D.C. Act applies the substantive and procedural provisions of the Longshore and Harbor Workers' Compensation Act, as amended, 33 U.S.C. §§ 901–950 (1988) ("LHWCA"), to cases involving

> injury or death of an employee of an employer carrying on any employment in the District of Columbia, irrespective of the place where the injury or death occurs; except that in applying such provisions the term 'employer' shall be held to mean every person carrying on any employment in the District of Columbia, and the term 'employee' shall be held to mean every employee of any such person.

D.C.CODE ANN. § 36–501 (1973).  The 1928 D.C. Act thus authorizes the "widest permissible extraterritorial application" of the LHWCA to employers, such as WMATA, which do business in the District.  *Director, OWCP v. National Van Lines, Inc.*, 613 F.2d 972, 979 (D.C.Cir.1979), *cert. denied*, 448 U.S. 907, 100 S.Ct. 3049, 65 L.Ed.2d 1136 (1980); *see also Exhibit Aids, Inc. v. Kline*, 820 F.2d 650, 652 (4th Cir. 1987) ("The potential extraterritorial reach of … [section 501] is enormous … [since] a literal reading could result in application of the D.C. Act to every employee injury so long as the employer engages in intermittent business in the District.").  In order to construe the 1928 D.C. Act without running afoul of the full faith and credit or due process clauses of the United States Constitution, this court has limited the reach of the statute "to cases where there is 'some substantial connection between the District and the particular employee-employer relationship.'"  *National Van Lines*, 613 F.2d at 979 (quoting *Cardillo v. Liberty Mutual Ins. Co.*, 330 U.S. 469, 476, 67 S.Ct. 801, 805, 91 L.Ed. 1028 (1947)); *accord Pfister*

*v. Director, OWCP*, 675 F.2d 1314, 1315 (D.C.Cir.1982).

In applying this "substantial connection" test in a given case, the Board or a reviewing court looks to a variety of factors to determine whether the District has a sufficient interest in a particular employment relationship to justify application of its workers' compensation regime.  *See National Van Lines*, 613 F.2d at 981 (jurisdictional test focuses on whether proposed forum's interest in case is legitimate and substantial); *Exhibit Aids*, 820 F.2d at 653 n. 3 (jurisdictional inquiry measures "quality" of District contacts).  One factor which strongly supports application of the 1928 D.C. Act is work activity by the injured employee in the District itself.  In *National Van Lines*, this court applied the Act to a claim against an interstate employer doing business in the District where the claimant's sole District contact was business travel into the District an average of once or twice a week over a five-year period.  *See* 613 F.2d at 981.  In *Greenfield v. Volpe Constr. Co.*, 849 F.2d 635 (D.C.Cir. 1988), we found the "substantial connection" test to be met where the employee, a Maryland resident injured while working in Virginia, had been hired in the District, had worked in the District for five years before transferring to Virginia, and had made periodic work-related trips to the District after his transfer.  *Id.* at 637–38.  And in *Gustafson v. International Progress Enters.*, 832 F.2d 637 (D.C.Cir.1987), this court applied the Act to a claim brought on behalf of an employee hired by the District office of a Saudi Arabian construction company who had worked exclusively in Saudi Arabia for nine months prior to the accident giving rise to the claim, where the employee had previously worked for several weeks in the District office and had maintained telephone contact with that office while in Saudi Arabia.[8]

Although the majority of Edgerton's employment contacts were with the Common-

---

**6.**  *Id.*

**7.**  Order Denying Reconsideration (Sept. 13, 1990) ("Board Reconsideration Order"), *reprinted in* R.A. 13.

**8.**  The court in *Gustafson* also relied in part on the fact that the claimant had no alternative forum in which to present the claim.  *See* 832 F.2d at 641 n. 17.

wealth of Virginia,[9] Edgerton did testify at his deposition that his route on the day of his injury entered the District and that, prior to November 1980, he had driven several other routes that entered the District on at least one trip. These assertions, however, were placed in doubt at the hearing, when Edgerton stated that he could not in fact recall whether the route he drove on the day of his injury went into the District.[10]

The ALJ chose not to credit Edgerton's deposition testimony, citing his faulty recollection at the hearing.[11] Believing that Edgerton carried the burden of establishing District jurisdiction, the ALJ concluded that no facts adequate to support jurisdiction under the Act had been demonstrated.

■ The ALJ failed to recognize that the burden of *disproving* the jurisdiction of the 1928 D.C. Act rests upon the party opposing the claim. Section 20 of the LHWCA provides in part:

> In any proceeding for the enforcement of a claim for compensation under this chapter it shall be presumed, in the absence of substantial evidence to the contrary—
>
> (a) That the claim comes within the provisions of this chapter.

33 U.S.C. § 920(a) (1988). This presumption of jurisdiction "applies with equal force to proceedings under the District of Columbia Act." *Cardillo v. Liberty Mutual Ins. Co.*, 330 U.S. 469, 474, 67 S.Ct. 801, 805, 91 L.Ed. 1028 (1947).

Edgerton's deposition testimony indicated that he may have frequently driven into the District as part of his employment. Since such work activity in the District, together with WMATA's own substantial business presence in the District, would have sufficed to establish the jurisdiction of the Act under the precedent of cases such as *National Van Lines, Gustafson* and *Greenfield*, WMATA bore the burden of demonstrating, by substantial evidence, that Edgerton's claimed work-related District contacts did not exist. WMATA, however, failed to meet this burden. Edgerton's testimony at the hearing that, five years after the fact, he could not recall whether his bus run on the day of his accident entered the District certainly does not constitute "substantial evidence" that it did not. Nor was Edgerton ever asked at the hearing about his routes prior to the time of his accident, even though he had testified at his deposition that such routes frequently entered the District. Presumably WMATA, as Edgerton's employer, possessed records indicating precisely what routes Edgerton drove at the relevant times; WMATA's failure to introduce any such evidence, therefore, supports an inference pursuant to the Section 20(a) presumption that the actual facts bolstered Edgerton's claim of frequent work-related District contacts.

We are therefore perplexed by the Board's order. Although the Board purported to give Edgerton the benefits of the Section 20(a) presumption, it found the presumption to be overcome, asserting that the ALJ had "rationally determined that claimant had no contacts with the District, based on claimant's hearing testimony."[12] However, this finding is unfathomable, because, in his hearing testimony, Edgerton never stated that his routes did *not* enter the District; he merely stated that he could not *remember* whether or not they did. Nor do we find that the ALJ ever made the

---

9. The record reflects that Edgerton is a Virginia resident and sustained his injury in Virginia; that he worked exclusively out of a garage in Alexandria, Virginia; that he picked up and dropped off his buses in Virginia; that the route he was driving when he was injured was principally located in Alexandria and Arlington, Virginia; that his supervisor and shop steward were located in Virginia; and that he was paid out of WMATA's Virginia Division. Additionally, Edgerton was able to select the routes he drove, and therefore was not subject to involuntary transfer to routes that went into the District.

10. Edgerton was never specifically asked at the hearing whether his routes prior to the month of his injury entered the District. Thus, this portion of his deposition testimony was never directly controverted.

11. ALJ Reconsideration Decision, *reprinted in* R.A. 6–7.

12. Board Decision, *reprinted in* R.A. 11.

conclusive determination attributed to him by the Board. Instead, the ALJ merely *presumed* that, in the absence of credible affirmative evidence of District contacts, no such contacts existed.

█ In his initial decision, the ALJ stated: "Since neither party has presented any evidence to show that the Claimant drove into the District, from his testimony *it must be assumed* he did not."[13] The language of the ALJ Reconsideration Decision further clarifies that the ALJ, rather than finding that WMATA had *disproved* Edgerton's assertions that he had worked in the District, merely viewed Edgerton's failure to *prove* the existence of such contacts as fatal to his claim: "the *establishment* of jurisdiction would be *somewhat less than unequivocal* based on [Edgerton's hearing] ... testimony"; "the testimony does little *to satisfy* a finding of jurisdiction"; and "[t]he evidence in the record simply does not *establish persuasively* that jurisdiction should attach in this matter.... [Therefore Edgerton] failed to meet his burden under the Act."[14] Indeed, in its Reconsideration Decision, the Board appears to have retreated from its assertion that the ALJ conclusively determined that Edgerton had no District contacts, and to have slipped into the same error committed by the ALJ himself. The Board rejected reconsideration on the grounds that "the evidence as evaluated by the administrative law judge fails to establish substantial contacts with the District."[15] This finding may be correct, but it is beside the point; under the Act, the *employer* must present persuasive evidence to demonstrate the *absence* of substantial contacts, at least where, as here, particular contacts sufficient to justify the coverage of the Act have been placed in issue, and no evidence is introduced adequate either to prove or disprove their existence.

### III.

█ Board decisions regarding jurisdiction must be supported by substantial evidence and consistent with applicable law. *See National Van Lines,* 613 F.2d at 980. The Board's affirmance of the ALJ's decision in this case met neither criterion. The Board's conclusion that WMATA had demonstrated, by substantial evidence, that the District lacked a significant connection with Edgerton's employment cannot be squared with the ALJ's failure to cite any evidence showing that Edgerton did not, either on the day of his accident or during the previous period of his employment, drive into the District in performing his employment duties. The apparent absence of evidence on this point is particularly glaring given that WMATA presumably was in possession of the records which could have demonstrated the precise course of Edgerton's routes. Without any such evidence, the ALJ would have been required pursuant to the Section 20(a) presumption to find that Edgerton had worked in the District, both at the time of his accident and previously; and such contacts, under the precedent of this court, would suffice to establish the "substantial connection" between Edgerton's employment and the District necessary to support the application of the 1928 D.C. Act to his claim.

We cannot discern, from the record before us, whether there is any evidence in the record that was created before the ALJ to rebut Edgerton's claim to employment contacts with the District. Accordingly, we remand the case to the Board with directions to return it to the ALJ. The ALJ should review the *existing record* to determine whether it contains the requisite evidence showing that Edgerton did not have employment contacts with the District. Assuming no such evidence is found, the ALJ shall permit the claim to proceed on the merits.

*So Ordered.*

---

13. ALJ Decision (emphasis added), *reprinted in* R.A. 2.

14. ALJ Reconsideration Decision (emphasis added), *reprinted in* R.A. 7.

15. Board Reconsideration Decision, *reprinted in* R.A. 13–14.